Commonwealth *v.* Herge, Appellant.

544

Submitted September 29, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*W. Thomas Andrews,* for appellant.

*Kenneth E. Fox, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, January 9, 1970:
Appellant Irvin C. Herge is now sixty-five years old. Some twenty-three years ago, he entered a plea of guilty to a charge of murder and was sentenced to life imprisonment. No direct appeal was taken. Since that time, however, he has not ceased his efforts to secure some form of post-conviction relief.

On February 6, 1967, appellant filed the present petition under the Post Conviction Hearing Act. He alleged (1) that he was entitled to a *Jackson-Denno* hearing on whether his confessions, admitted into evidence at his degree of guilt hearing, were voluntary, and (2) that he was unconstitutionally denied his right to appeal.[1] The hearing judge held that he was not entitled to a *Jackson-Denno* hearing, and, after an evidentiary hearing, that he was not denied his right to appeal. We reverse both determinations.

In *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964), the Supreme Court held unconstitutional New York's procedure of submitting, for jury determination

---

[1] Appellant made several other claims which were denied by the hearing court, but these claims were not pressed on this appeal.

at trial, disputed questions of fact concerning the voluntariness of a confession. The Court stated that a proper determination of voluntariness could not be made when the jury is, at the same time, considering questions of guilt, since the jury "may find it difficult to understand the policy forbidding reliance upon a coerced, but true confession." 378 U.S. at 382, 84 S. Ct. at 1783. Not only did the Court hold New York's procedure unconstitutional, it further mandated the procedure that must be used to satisfy due process. "The procedures used in the trial court to arrive at its conclusions on the coercion issue . . . must . . . be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." 378 U.S. at 391, 84 S. Ct. at 1788.

The instant case differs from *Jackson* in one important respect—the resolution of the factual dispute over voluntariness was here made by a judge, rather than a jury. Nevertheless, *Jackson's* insistence on a "clear-cut determination of the voluntariness of the confession" must be satisfied. We must find that the trier of fact has "fac[ed] the issue squarely." 378 U.S. at 390, 84 S. Ct. at 1788. This is fundamentally important because an appellate court must be certain that the trier of fact did resolve disputed facts, and did apply the proper law to these facts. Otherwise, we could not insure a defendant's right to have an involuntary confession entirely disregarded. See *Jackson*, 378 U.S. at 389, 390, 84 S. Ct. at 1787, 1788.

In the instant case, however, we have no clear-cut resolution of the factual disputes over voluntariness. Compare *United States ex rel. Owens v. Cavell*, 254 F. Supp. 154 (M.D. Pa. 1966). The trial judge made no finding on whether the confessions were voluntary, although it is implicit in his opinion that he believed the

confessions were truthful. Nowhere does he assure us that he considered these issues separately, a requirement mandated by *Jackson*.[2] See also *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S. Ct. 735, 741 (1961) (FRANKFURTER, J.) (attention of trial judge must focus on whether confession was "freely self-determined," without regard to whether defendant spoke the truth). Thus we are in the same position that the Supreme Court of the United States was in *Jackson*. "We cannot determine how the . . . [judge] resolved these issues and will not assume that they were reliably and properly resolved against the accused." 378 U.S. at 387, 84 S. Ct. at 1786.

To make a determination of voluntariness, conflicting testimony must be weighed, and credibility must be assessed. Thus we may not now, as did the hearing court, search the record made at the 1946 degree of guilt hearing to decide the factual question of whether the confessions were voluntary, even if we do apply

---

[2] If anything, the judge's opinion indicates that he did *not* consider the question of voluntariness independently. The judge merely ruled that the damaging statements were "admissions," not "full confessions." Such a distinction today is not viable. See *Miranda v. Arizona*, 384 U.S. 436, 476, 86 S. Ct. 1602, 1629 (1966); cf. *Commonwealth ex rel. Corbin v. Myers*, 423 Pa. 243, 223 A. 2d 738 (1966), cert. denied, 386 U.S. 1013, 87 S. Ct. 1361 (1967). Further, when defense counsel objected to the introduction of a statement, on the basis that he wished to interrogate witnesses as to how the statement was obtained, the judge ruled that this objection applied only to confessions, not admissions. At only one time did the trial judge make any reference to voluntariness when ruling on admissibility. But this ruling was a bare statement that the confession was voluntary, and it hardly fulfills the *Jackson* requirement. The trial court did not give any reasons for finding the statement voluntary, either in the record or in its opinion, and this finding was made before appellant's testimony, or the testimony of any of the psychiatrists was even heard. Thus the record as a whole would appear to indicate that the hearing court never did consider squarely the question of voluntariness, as opposed to truthfulness.

present-day law. See *Commonwealth v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968). For example, the Commonwealth's witnesses testified to a somewhat leisurely interrogation and stated that the confessions were completely voluntary; appellant testified that he was questioned for two days, got little sleep, was placed in a very uncomfortable cell, and did not remember what he said or did during those two days (he made numerous contradictory confessions). Further, as the trial judge noted in his opinion, appellant is a borderline case between sanity and insanity, and the Commonwealth's experts all agreed that appellant lacks the ability to stand pressure, is wholly impulsive, and is given to self-pity. Under these circumstances, we cannot now possibly determine—from a cold record without any finding as to voluntariness—whether appellant's "will ha[d] been overborne and his capacity for self-determination critically impaired." *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S. Ct. 1860, 1879 (1961) (FRANKFURTER, J.). Without a negative determination of this issue, "the use of his confession offends due process." Id.

There remains one further consideration. The Commonwealth urges, and the hearing court so found, that appellant's trial counsel did not bring to the trial court's attention their desire to object to these confessions on the ground of involuntariness. Clearly, appellant would not now be entitled to relief if counsel had made a choice to not attack the voluntariness of the confessions. See, e.g., *Commonwealth ex rel. Smart v. Myers*, 424 Pa. 315, 317, 227 A. 2d 831, 832 (1967).

But that is not the case here. True, appellant's counsel did not object to every statement, oral and written, which was introduced. He did, however, object specifically to the introduction of several written statements, and his cross-examination of the Commonwealth's witnesses evidences counsel's desire to test the

voluntariness of all the confessions. In fact, when he specifically noted, near the beginning of the trial, his objections to the confessions on the ground of involuntariness, the trial court held that the statements were admissions, not confessions, and hence admissible. We do not exalt form over substance, and we do not require counsel to make constant and repetitive objections where, as here, the tainted evidence constituted the bulk of the hearing. We do require that the issues be called to the trial court's attention. That requirement has been met here. See *Commonwealth ex rel. Fox v. Maroney,* 417 Pa. 308, 313 n.5, 207 A. 2d 810, 813 n.5 (1965) (citing facts of several cases where we have held no waiver).

Appellant not having waived his right to object to the introduction of these statements, we therefore now hold that he is entitled to a *Jackson-Denno* hearing on their voluntariness.

We next consider appellant's claim to relief under *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963). It is now settled law in this Commonwealth. that, when confronted by a trial record which is silent on the question of the waiver of the right to appeal, the burden rests on the Commonwealth to prove such a waiver. See, e.g., *Commonwealth v. Wilson,* 430 Pa. 1, 241 A.2d 760 (1968). In the instant case we cannot say that the Commonwealth has met its burden.

Appellant, under questioning by both the district attorney and his own counsel, stated that in 1946 he did not know of his right to appeal, was indigent, and did not know of his right to have counsel appointed. The original trial judge testified that he did not inform appellant of his right to appeal. Further, appellant testified that his original lawyers, hired by his brother, abandoned him after sentence was imposed.[3] The Com-

---

[3] Both of appellant's original trial lawyers are now deceased. But in a letter sent to appellant a year after his degree of guilt

monwealth produced no evidence, but the hearing judge held that appellant had voluntarily and knowingly waived his right to appeal, apparently because of statements made by appellant under questioning by the hearing judge.[4]

The most that can be said about the statements "contradicting" appellant's testimony on knowledge of his right to appeal is that the statements were given in response to some rather confusing questions. As to the problem of his indigency, no one contends that, in 1946, he was told of his right to free appellate counsel. The Commonwealth does contend, however, that appellant was not indigent and, therefore, did not forego an appeal because he could not pay for counsel. But there is absolutely no proof that he could afford appellate counsel. At best, the Commonwealth has shown that appellant had a very small amount of money. The Commonwealth has not shown that this money was sufficient to have retained appellate counsel, nor may we speculate that it was. "Indigency," in the context of

---

hearing, the then district attorney wrote: "[A]nother matter which I have no direct connection with, is the fact that your brother and Mr. Logan [one of appellant's original trial counsel] had some personal misunderstanding in connection with the possibility of a new trial. . . . I can assure you, had Mr. Logan taken the necessary steps, which he is well familiar with, you might have been granted a new trial."

[4] The colloquy was as follows: "The Court: You had money to hire your own counsel at that time [1946]? Mr. Herge: I had $485.00. . . . The Court: And you knew you had the right to take an appeal, but you didn't have a transcript, that was what was making you mad at the time [1946] isn't that right? Mr. Herge: Yes. The Court: When you were convicted in 1946, you knew of your right to take an appeal, but you couldn't do it without the transcript? Mr. Herge: I couldn't do it without a transcript. As to know which court to go to, I didn't know. I didn't know until ten years later the difference between a Supreme and a Superior Court. The Court: But you knew at the [?] time you had a right to go up? Mr. Herge: Yes."

*Douglas* and *Wilson,* supra, does not mean total lack of funds; it means lack of *sufficient* funds. Thus, on either the ground of lack of knowledge of the right to appeal, or on the ground of lack of knowledge of the right to free appellate counsel, appellant must be given relief, since the Commonwealth has not carried its burden of proof.[5]

Appellant now being entitled to an appeal as though timely filed, we reverse and remand this record to the court below with directions that the court shall appoint counsel for the purpose of filing and arguing post-trial motions and, if necessary, prosecuting an appeal. Since we have also found that appellant's right under *Jackson v. Denno,* supra, has been violated, we remand for a hearing on that issue as well.

The order of the Court of Oyer and Terminer of Lawrence County is reversed and the record is remanded for proceedings consistent with this opinion.

Mr. Justice EAGEN concurs in the result.

Mr. Justice JONES and Mr. Justice POMEROY dissent.

---

[5] The Commonwealth also urges that appellant has waived his right to *Douglas* relief because of Section 4 of the Post Conviction Hearing Act. This contention is without merit. All but one of appellant's collateral attack proceedings were commenced before *Douglas* was decided. Thus, they could not operate to waive his claim. See *Commonwealth ex rel. Berkery v. Myers,* 429 Pa. 378, 239 A. 2d 805 (1968); *Commonwealth v. Stevens,* 429 Pa. 593, 240 A. 2d 536 (1968). The only collateral attack pursued after *Douglas* was done without counsel. Again, we have "made it quite clear that waiver may be *presumed* only where the petitioner had counsel at the time the waiver allegedly occurred." *Commonwealth v. Mumford,* 430 Pa. 451, 455, 243 A. 2d 440, 442 (1968). The Commonwealth could, of course, prove intentional waiver in the post-*Douglas* proceeding, but this it has not done. Further, although the Commonwealth does not suggest that appellant waived his right to *Jackson-Denno* relief, we might note that the reasons for finding no waiver of his *Douglas* claim apply with equal force to his *Jackson-Denno* claim, *Jackson v. Denno* not having been decided until 1964.

552

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

On March 11, 1946, more than *twenty-three years ago*, this defendant, the appellant herein, *while represented by two able attorneys, pleaded guilty to murder* and was sentenced to life imprisonment. Since that time, appellant has flooded the Courts of this Commonwealth and those of the United States with petitions seeking to void his original conviction. The correctness of the original conviction can best be demonstrated by the number of times—eleven—appellant's conviction has been sustained and his subsequent contentions have been held to be without merit.

In 1949, a petition for a writ of habeas corpus was brought directly to this Court and was denied. In 1949, appellant, with the assistance of counsel, filed a petition for habeas corpus in the District Court for the Western District of this State. After a hearing, the writ was denied and a petition for a certificate of probable cause to appeal was denied.

In 1953, a petition for a writ of habeas corpus which was filed in the Court of Common Pleas of Lawrence County was dismissed by that Court.

In 1955, a petition for a writ of habeas corpus was filed in the Court of Common Pleas of Lawrence County. Appellant was represented by competent counsel of his own choice at the Court hearing, after which his petition was dismissed (with an accompanying Opinion) and this dismissal was affirmed by this Court, *Commonwealth ex rel. Herge v. Martin*, 387 Pa. 117, 126 A. 2d 711.

In 1957, appellant filed another petition for a writ of habeas corpus in the Court of Common Pleas of Lawrence County, which was again denied.

In 1957, appellant filed another petition for a writ of habeas corpus in the District Court for the Eastern District of Pennsylvania. After a hearing, the petition was denied. Appellant's request for a certificate of

probable cause to appeal was denied; his request for reconsideration was granted, and his request for a certificate of probable cause again refused. Appellant then attempted to appeal to the United States Supreme Court, but this appeal was denied.

In 1958, appellant once again petitioned the Court of Common Pleas of Lawrence County for a writ of habeas corpus and his request was again denied.

In 1963, appellant again petitioned the Court of Common Pleas of Lawrence County for a writ of habeas corpus. That petition was denied (with an accompanying Court Opinion) and the denial was affirmed by this Court, *Commonwealth ex rel. Herge v. Rundle,* 415 Pa. 36, 202 A. 2d 24.

In 1964, appellant twice petitioned the Court of Common Pleas of Lawrence County for a writ of habeas corpus and each of these requests was denied.

In 1968, appellant initiated a proceeding under the Post Conviction Hearing Act. Eleven of his thirteen claims were dismissed, and a hearing ordered by the lower Court on the two remaining claims. After the Court hearing, relief was denied on these two claims.

Defendant's original trial attorneys are now deceased. Appellant, having pleaded guilty while represented by these lawyers, now asserts that his confessions were not voluntary, that he never knew of his right to appeal or to have Court-appointed counsel on appeal.

At defendant's (appellant's) original trial, *the Commonwealth witnesses testified that defendant's confessions were voluntary and the lower Court so found.*

Nevertheless, a majority of this Court is remanding this case, nearly a quarter of a century after trial and conviction, for further consideration of the voluntariness of defendant's guilty plea, and is directing the Court below to appoint counsel for the purpose of filing and arguing post-trial motions, and, if necessary,

prosecute an appeal. I pause long enough to ask: (1) Where will the Commonwealth find, after twenty-three years, its witnesses, and, if found, what will be their clear and dependable recollections; and (2) *is there no such thing in the law as "finality" in decisions of the Courts in criminal cases*; and (3) is Justice a one-way street, one-way for the criminal only; and (4) have the public no realistic rights to protection and safety against dangerous criminals; and (5) have other criminals and all civil litigants no rights to a more speedy trial of their long-delayed claims and cases? Is it any wonder that our Courts are swamped with a multitude of cases and a backlog which is stupendous!

The majority's farfetched, pro-criminal Opinion is to me almost unbelievable. The net result will be to open wide the doors of every prison and let many convicted murderers, and many armed robbers, and many perverted dangerous rapists and other dangerous criminals go free,—if they are willing to invent (as they undoubtedly will be) a legally helpful lie—no matter how many years ago they were convicted or how often they confessed their respective guilt, or how often the Courts have affirmed their convictions, *or how disastrous and dangerous their release will be to the safety and the protection of the Public.*

In these days when violent crime is rampant and terror stalks our Land, I once again urge the highest Courts of our State and Nation (1) to give greater protection to the law-abiding Public and (2) to close the legal loopholes they have recently and unrealistically invented which enable dangerous criminals to escape their swift and just punishment, and (3) to limit every convicted criminal to one appeal or to one post-conviction hearing.

For these reasons, I very vigorously dissent.