Commonwealth *v.* Freeman, Appellant.

3

Submitted April 21, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Joseph McCluskey,* for appellant.

*Phillip H. Williams,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 20, 1970:

On May 15, *1965,* Donald Freeman (appellant), while represented by two Court-appointed counsel, was convicted by a jury of murder in the second degree. No post-trial motions were filed. On June 7, 1965, he was sentenced to imprisonment for not less than ten nor more than twenty years. Subsequently, Freeman filed a petition under the Post Conviction Hearing Act. He alleged that he was denied his right to counsel on appeal, as required by *Douglas v. California,* 372 U.S. 353, and that he did not knowingly and intelligently waive that right. It is by now well established that a person convicted of crime is entitled to appeal and to be represented in his appeal by an attorney, and, if indigent, by a Court-appointed *free* attorney. These rights can be waived only by a knowledge of and a voluntary waiver of his rights. Defendant also contends that two con-

4

fessions which were used against him at trial were taken from him in violation of his Constitutional rights. From the Order of the lower Court which denied his petition, defendant took this appeal.

## I. Waiver of *Douglas* Rights

The record shows, we repeat, that Freeman was represented at trial by two experienced *Court-appointed* attorneys. Within a few days after his conviction, both of them met with him at the jail. Both counsel testified at the post-conviction hearing that at their meeting with Freeman, he was informed of his right to move for a new trial and, if his motion was denied, to appeal to the Supreme Court of Pennsylvania.

Arlington Williams, one of appellant's counsel, testified that his co-counsel, James C. Scanlon, "explained to him [Freeman] these rights and then told him that *whether he wanted us to file this motion for a new trial and a subsequent appeal,*\* if a new trial was denied, was a matter for his decision." According to the testimony of Scanlon, Freeman then said that he "did not want to appeal." Scanlon further testified that Freeman later reiterated this decision, saying, in addition, that he wanted "to go ahead and serve his sentence and get it over with." Freeman asserts that he was *never expressly told* that he had the right to Court-appointed counsel on appeal if he could not afford private counsel. However, where the facts or circumstances show that a defendant is aware of his rights, a defendant can intelligently and knowingly waive his right to appeal. *Commonwealth ex rel. Newsome v. Myers,* 428 Pa. 141, 236 A. 2d 763; *Commonwealth ex rel. Edowski v. Maroney,* 423 Pa. 229, 235, 236, 223 A. 2d 749.

---

\* Italics throughout, ours.

In those cases, this Court found, in similar circumstances, that an accused *was aware* of his *Douglas* rights and had made a knowing and voluntary waiver of them. In each of those cases, the defendant had Court-appointed counsel at trial who was prepared to continue to represent him in further proceedings if he so wished. In each of those cases, a review of the complete record shows that the defendant was *never expressly told* that he had the right to free Court-appointed counsel on appeal. Nevertheless, this Court held in both of said cases that the record showed that the defendant was fully aware of his *Douglas* rights and voluntarily relinquished them.

We find that this defendant (Donald Freeman) understood his right to have his free Court-appointed counsel represent him in a motion for a new trial, as well as in an appeal, and that he knowingly, voluntarily and intelligently waived or relinquished these rights.

*An accused can waive these rights* if that waiver constitutes an "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938); see also, *Commonwealth v. Wilson,* 430 Pa. 1, 241 A. 2d 760. However, if the record is silent, the burden of proving such a waiver is upon the Commonwealth. *Commonwealth v. Ezell,* 431 Pa. 101, 103, 244 A. 2d 646; *Commonwealth v. Wilson,* 430 Pa., supra (page 3).

Testimony at the Post Conviction Hearing Act hearing shows, we repeat, that defendant had been represented at trial by two experienced, *free* counsel, and that after his trial and conviction, these attorneys "explained to him these rights and then told him that whether he wanted *us* to file this motion for a new trial *and a subsequent appeal,* if a new trial was denied, was a matter for his decision." Moreover, defendant testified at the post-conviction hearing that he knew his lawyers' services were provided "for nothing" and that

"the Commonwealth paid for it." There is no evidence in this record, or even a reasonable inference, that defendant believed, or had any reason to believe, that his attorneys' services on appeal would not be free.

No matter how guilty a defendant is, no matter how often he has voluntarily confessed his guilt, the Minority would require *actual awareness or knowledge* of his rights to be determined *solely* by "parroted words," when all the facts and circumstances, and *defendant's own words show his awareness and knowledge of his right to appeal and to have his free, Court-appointed counsel* represent him on appeal. Even a Procrustean stretch of the Constitution or of prior decisions of the Supreme Court of the United States cannot support such a highly technical and far-fetched position. It is clear that defendant knew of his right to free Court-appointed counsel to represent him in post-trial motions and in an appeal, and that he voluntarily, understandingly and intelligently waived this right.

## II. Confessions

Appellant by his counsel contended at his Post Conviction Hearing Act hearing that his Constitutional rights were violated when two statements or confessions made by him were introduced over objection at his trial. His first statement was made to the police in a telephone conversation shortly after the police were informed of the killing of the victim; the second was made to the police after Freeman had been arrested and taken to State Police Headquarters for questioning.

The police were first alerted to the shooting of the victim, Claude Ludwig, when State Police Corporal Weber received a telephone call from a man named Bush. Bush told Weber that a man came into his gas station and said that he had killed a man. Weber imme-

diately sent two police officers to the scene and then called Bush to ask him if he knew the name of the killer. Bush replied that he did not know the man's name but that the man was still there. Bush asked this man— the defendant, Freeman—to talk to Weber on the phone, which he did. Corporal Weber testified: "Q. And did the person on the other end of the phone identify himself? A. He did. Q. And who did he say he was? A. Donald Freeman. Q. . . . [W]ould you tell us the conversation that you had with this man who purported to be Donald Freeman? A. I asked him what happened, and he said he had shot Claude Ludwig. I asked him if he was dead, and he said he didn't know, but if they got an ambulance they may be able to save him, and then he hung up."

Freeman contends that these statements could not properly be admitted in evidence because he had not been warned of his Constitutional rights before speaking to Corporal Weber on the telephone. Neither *Escobedo v. Illinois,* 378 U.S. 478, nor *Miranda v. Arizona,* 384 U.S. 436 (even if it were applicable, which it is not), nor any other case, requires that a statement or confession, voluntarily made in these circumstances, be suppressed or excluded. Unlike *Escobedo,* the police investigation was at that time "a general investigation of 'an unsolved crime.' " *Escobedo v. Illinois,* 378 U.S., supra (page 485). Appellant was not in custody, and his statement or confession was, without any doubt, "volunteered" and admissible.

Appellant also contends that the notes of an oral confession of the murder which he made at the State Police Station, in the presence of District Attorney Marsh and Trooper Geib, were inadmissible because they were obtained in the absence of counsel at a time when representation was Constitutionally required. Trooper Geib testified: "Mr. Marsh . . . informed him of his rights to secure counsel, that he could remain si-

lent if he so desired and that anything he would say could be held against him in Court and that there was the possibility of Mr. Freeman facing a charge of murder."

Appellant contends that if a confession is made after such warnings are given and the interrogation continues without the presence of an attorney, a "heavy burden" rests on the Commonwealth to prove that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to the assistance of counsel. For this proposition, he relies upon *Miranda v. Arizona*, 384 U.S., supra, which is inapplicable. Defendant's trial was completed on May 15, 1965, while *Miranda* was not decided until June 13, 1966. *Johnson v. New Jersey*, 384 U.S. 719, held that *Miranda* is applicable only to criminal trials commencing after June 13, 1966. Thus, the admissibility of defendant's confession is measured solely by the standards of *Escobedo v. Illinois*, 378 U.S., supra, and *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A. 2d 765. Having been advised of his rights as required by *Escobedo* and *Jefferson*, and absent any evidence of a request by appellant that a lawyer be obtained for him, or that the questioning proceed no further, the statement or confession made by him to District Attorney Marsh and Trooper Geib did not violate any of appellant's Constitutional rights and was properly admitted in evidence.

Appellant further contends that he was so influenced by alcohol and shock that he was unable to comprehend the warnings which were given him. This contention was amply refuted by testimony given at a Post Conviction Hearing Act hearing, and merits no further consideration or discussion.

We find no merit in any of appellant's contentions. The Order of the lower Court is affirmed.

Mr. Justice JONES concurs in the result.

Mr. Justice COHEN, Mr. Justice EAGEN and Mr. Justice POMEROY join in this opinion.

CONCURRING OPINION BY MR. JUSTICE EAGEN:

Every person convicted of crime has the right to appeal, and if he is indigent he has the right to file his appeal without expense to himself, and to have his appeal perfected and prosecuted by counsel appointed by the court and paid for by the state. *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814 (1963). However, every person convicted of crime is not required to appeal and he may waive his rights in connection therewith. But to constitute an effective waiver, the record must establish that he intentionally and knowingly abandoned their rights, and it follows that one cannot be said to have knowingly abandoned his rights unless he was aware of what these rights are. *Commonwealth v. Wilson*, 430 Pa. 1, 241 A. 2d 760 (1968).

In the instant case the court below, after hearing the testimony of the convicted defendant and his trial counsel, concluded that Freeman was fully aware of all of his rights in connection with the filing and prosecution of an appeal from his conviction, and with this knowledge he failed intentionally to pursue them. Hence, the sole issue before us is whether or not the record supports the lower court's conclusion in this respect. More refined, the issue is whether or not the record supports a finding that Freeman knew of his right to prosecute his appeal through legal counsel paid for by the county and without expense to himself.

The record discloses the following pertinent facts: that before trial the court appointed two lawyers to represent Freeman, defend the charges brought against him and directed that their services for so doing be paid for by the county;[1] that the competence of these

---

[1] Freeman admittedly knew that his lawyers were serving without any expense to him.

lawyers is undisputed (one is now the President Judge of the 43rd Judicial District) ; that these lawyers assisted Freeman in preparing his defense and presented that defense at trial; that two days after the guilty verdict was returned, these lawyers visited Freeman in jail and told him of his post-trial rights, inter alia, "[F]irst, to make him have his counsel move for a new trial, and, secondly, that if that new trial was denied, that he had a right to appeal to the Supreme Court of Pennsylvania and have his case reviewed . . . . that whether he wanted *us* to file this motion for a new trial and a subsequent appeal if a new trial was denied was a matter for his decision." (Emphasis added.)

Following the conversation, outlined in part above, Freeman asked his counsel about "any possible right he might have to obtain a release from any jail sentence that he might receive," and was then advised by his counsel of his right to apply to the Board of Pardons for commutation of sentence, but his counsel could not promise the Board would act favorably on such a request. Following this, Freeman then told his counsel "that he had no wish to proceed with a new trial," and subsequently repeated this decision.[2]

It is true that Freeman was not specifically told that his trial counsel would proceed to seek a new trial in the trial court, or in the Supreme Court if necessary, without any expense to him. And it is equally true that the wisest course for counsel to pursue is to so advise their clients of this fact in the clearest language. However, absent such specific advice, it does not necessarily follow that a convicted defendant is not aware that his counsel will so proceed without expense to him. And even in the absence of such specific advice, if it

---

[2] According to evaluations resulting from psychological tests, Freeman had an I.Q. of 118 (above average) and an academic potential of Junior College level.

is still demonstrated that a convicted defendant is aware that his counsel will so proceed, this is sufficient to sustain a finding of an effective waiver. Cf. *Commonwealth v. Wilson,* supra.

In view of all the circumstances that the present record discloses, how can one realistically say that the court below erred when it concluded that Freeman was aware of his right to "free counsel" if he wished to appeal from his conviction? With all due respect for the views expressed by my learned brother, Mr. Justice ROBERTS, it is my view that to conclude that the court below erred in this respect belies common sense, and I, for one, still believe that the courts are not required to ignore all common sense in making a decision.

I join in the majority opinion.

Mr. Justice POMEROY joins in this concurring opinion.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

Joining as I do in the opinion of the Court and in the concurring opinion of Mr. Justice EAGEN, I add the following observations only because of the earnest dissenting opinion of Mr. Justice ROBERTS. With all respect, I believe he misinterprets what has been decided. As I view it, the Court is not at all unmindful of the federal constitutional rights enunciated in *Douglas v. California,* 372 U.S. 353 (1963), nor is it receding from the decision of our Court in *Commonwealth v. Wilson,* 430 Pa. 1, 241 A. 2d 760 (1968) and its "progeny." No new uncertainties should result from the present decision, nor should any new burden be placed on the federal courts; no separate or deviate approach to the guaranteed right of appeal and the elements of waiver of that right is indicated by what has been here decided.

The question before us is a very narrow one, a factual one, of determining whether, on the whole record, the defendant, being indigent, knowingly waived his

12

right to appeal with the assistance of court-appointed counsel. More specifically, the question is whether since there was no record made on this subject at the trial court level, the Commonwealth sustained the burden which it had of proving such a waiver by the fair weight of the evidence.

As has been pointed out in the other opinions, two able lawyers were appointed to represent the defendant. This occurred on the very day of his arrest. They gave immediate and continuous attention to the protection of his rights, from a prompt motion to suppress a confession (based on *Jackson v. Denno,* 378 U.S. 368 (1964)), through the preliminary hearing, the trial and the sentencing. Following the sentencing, they conferred at length with their client and told him of his right to have "his counsel," i.e., his two court-appointed counsel, move for a new trial; he was further told that he had a right to appeal if a new trial was denied and that his court-appointed counsel would prosecute that appeal if he gave the word. The decision as to whether an appeal should be taken was properly left to the defendant.

There is no testimony that defendant's attorneys told him in express terms that their services in prosecuting an appeal would be rendered at no cost to the defendant just as their services prior to the conviction had been rendered free of charge. But, as the other opinions note, the defendant testified that he knew his lawyers' services were provided "for nothing" and that they were to be paid by the Commonwealth. There is no suggestion in this record that defendant either believed, or had any reason to believe, that his attorneys' services on appeal would not be free; at the PCHA hearing defendant begged ignorance of his appeal right, but he evaded a direct answer to the question whether he understood that an appeal would be provided at public expense. On this record, there was a clear issue of

credibility, and the hearing judge was justified in believing defendant's attorneys and in finding and concluding that the Commonwealth had met its burden of proving that Freeman had been fully advised of all his rights and that his decision not to appeal was knowingly made.

It would, of course, have been better had Messrs. Williams and Scanlon, appellant's lawyers, been categorically asked whether they had advised Freeman that he had the right to free counsel on appeal, and had given a categorical answer. In the context of the whole proceeding, however, this omission is understandable. The decision of this Court in *Wilson* had not yet come down, and the emphasis the Court has since placed on the right to free or court-appointed counsel as a right separate and distinct from the right of appeal had yet to be articulated. But this is not fatal where, as here, the circumstances disclosed by the record support a finding that the defendant was informed of his right to the assistance of court-appointed counsel on appeal. We have not yet held that circumstances can never spell waiver, or that a precise verbal formulation of waiver is a constitutional mandate. To find on this record a waiver of defendant's right to the assistance of free counsel on appeal is not, in my view, a substitution of inference for evidence; neither does such a finding establish, as the minority suggests, a presumption that "without any evidence, . . . all indigent defendants, represented by free counsel at trial, know that they can have free counsel on appeal." Unlike *Wilson,* where the record was "completely silent as to whether appellant was at any point informed or was aware that he was entitled to court appointed counsel", *Wilson, supra,* at p. 5, the record here supports the opposite finding.

To summarize, I believe that on the whole of the record in the case at bar, the hearing judge was justi-

fied in finding that Freeman knew of his right to appeal, using his court-appointed counsel for the purpose. That is all I understand to be decided in this case.

Mr. Justice EAGEN joins in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Today a majority of this Court has denied appellant his constitutionally-guaranteed right to free appellate counsel. In so doing, the majority has ignored the facts of this case, our recent decisions in this area, and controlling principles of federal constitutional law. For our state courts, this decision means new uncertainties; an area of the law presumably settled by us now becomes unclear. For the federal courts, this decision means unnecessary burdens; an area of the law in which our decisions were in accord with federal constitutional law now becomes one in which our decisions are in conflict. I cannot accept these results and I must dissent.[1]

First, the majority ignores several critical facts which are relevant to appellant's knowledge of his right to free appellate counsel. The record made at trial is devoid of *any* indication that appellant was informed of his right to free appellate counsel. Likewise, the PCHA record is devoid of *any* evidence that appellant knew of his right to free appellate counsel.[2] Ap-

---

[1] I agree with the majority that since the holding in *Miranda* does not apply to the instant case, appellant's confessions were properly admitted at trial. Were *Miranda* applicable, however, the confessions would be inadmissible for failure to give the proper warnings.

[2] There was only one question asked at the PCHA hearing which even remotely concerned appellant's knowledge of his right to free counsel on appeal: "Q. [W]hen the appeal was explained or discussed with you, did you or did you not understand that an appeal would be provided at public expense if you didn't have any money? A. [Freeman] I didn't understand anything about an appeal. I didn't know the power of an appeal, what it meant, what it was based on." This statement was never contradicted.

pellant's trial counsel were *never* questioned on this point. The Commonwealth produced *no* evidence on this point. And the hearing court made *no* finding on this point.[3]

Yet, despite the lack of *any* evidence indicating that appellant knew of his right to free counsel on appeal, the majority finds that "[i]t is clear that defendant knew of his right to free Court-appointed counsel to represent him in post-trial motions and in an appeal, and that he voluntarily and intelligently waived his right." Since there is nothing in the record to support such a "finding,"[4] I can only conclude that the

---

[3] The hearing court stated that the issue was "whether Petitioner knowingly and intelligently waived his right to appeal." No mention is made of petitioner's right to free counsel on appeal.

[4] The testimony of trial counsel that they "explained to him these rights" does not support the majority's "finding." "These rights," taken in context, refers only to the rights to file post-trial motions and take an appeal. No reference was made to appellant's right to free counsel on appeal. But, so that the reader may determine for himself the context of the quotation, the paragraph from which it was taken is quoted in its entirety below.

In response to a question by the district attorney, Arlington Williams, one of appellant's original trial counsel, testified: "Well, my recollection is this, that Mr. Scanlon [co-counsel] and I together went to see Mr. Freeman for the express purpose of advising him what his rights were in connection with a motion for new trial and possible appeal if the new trial was denied. Mr. Scanlon and I went to the Monroe County Jail, and, as I recall it, this conviction, the jury verdict, came in on a Saturday, and we talked to Mr. Freeman in the early part of the week following the day the jury rendered the verdict. At that time, Mr. Scanlon did the explanation. He advised Mr. Freeman concerning his rights, first, to make him have his counsel move for a new trial, and secondly, that if that new trial was denied, that he had a right to appeal to the Supreme Court of Pennsylvania and have his case reviewed. There was a mention of four days, as I recall it, in which, under our rule of court, this motion would normally be made. It is my recollection that in this particular instance, since the verdict was rendered on the last day the court sat, that under the rule, there was additional time in that a motion could be filed at the next session

16

majority's "finding" is based on an assumption that since appellant "had been represented at trial by two experienced, *free* counsel," he must have known of his right to free appellate counsel. Only by such an assumption could the majority eliminate the need for affirmative record evidence on the crucial issue of appellant's *actual* knowledge of his right to free appellate counsel.

I find this substitution of assumption for evidence unusual, particularly in light of a long, and until today unbroken, line of cases which we have decided over the past several years: *See, e.g., Commonwealth v. Herge,* 436 Pa. 542, 260 A. 2d 787 (1970) (alternative holding); *Commonwealth v. Gist,* 433 Pa. 101, 249 A. 2d 351 (1969); *Commonwealth v. Zaffina,* 432 Pa. 435, 248 A. 2d 5 (1968); *Commonwealth v. Ezell,* 431 Pa. 101, 244 A. 2d 646 (1968); *Commonwealth v. Mumford,* 430 Pa. 451, 243 A. 2d 440 (1968); *Commonwealth v. Hall,* 430 Pa. 163, 242 A. 2d 241 (1968); *Commonwealth v. Stewart,* 430 Pa. 7, 241 A. 2d 764 (1968); *Commonwealth v. Wilson,* 430 Pa. 1, 241 A. 2d 760 (1968); *cf. Commonwealth v. Stewart,* 435 Pa. 449, 257 A. 2d 251 (1969) (reaffirming earlier *Stewart* holding); *Commonwealth v. Ritchey,* 431 Pa. 269, 245 A. 2d 446 (1968) (concerning counsel at trial; reaffirms standard enunciated in *Stewart, supra*); *Commonwealth ex rel. Fink v. Rundle,* 431 Pa. 264, 244 A. 2d 648 (1968) (not a silent record and therefore petitioner had burden of proving he did not know of his right to free appellate counsel); *Commonwealth v. Blose,* 430 Pa. 209, 241 A. 2d 918 (1968) (counsel at trial). These cases stand for the proposition that there must be a *finding of fact* that an accused indigent not

_____

of the court. Mr. Scanlon explained to him these rights and then told him that whether he wanted us to file this motion for a new trial and a subsequent appeal if a new trial was denied was a matter for his decision."

only knew of his right to appeal, but also that he knew of his right to free counsel on appeal, and intelligently waived both rights by not appealing. And, not only must there be a showing of an accused's knowledge of both rights, but where there was no trial record on the issue, the Commonwealth has the burden, at the PCHA hearing, of proving that the defendant had the requisite knowledge.

*Commonwealth v. Wilson, supra,* is particularly instructive, for it is clear that *Wilson* and the instant case are identical in every respect—except for this Court's disposition. Wilson, like Freeman, was an indigent represented by court-appointed counsel at trial. Wilson, like Freeman, was not told at trial of his right to appeal, or of his right to free counsel to prosecute his appeal. Wilson, like Freeman, filed a petition under the Post Conviction Hearing Act, alleging a denial of his constitutional right to appeal, as set forth in *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963). Wilson, like Freeman, was denied relief by the hearing court, on a finding only that he knew of his right to appeal, and waived that right by not appealing.

But Wilson, unlike Freeman, was given relief. This Court held that the right to free appellate counsel is part of an accused's rights under *Douglas.* This Court held that "an accused cannot waive his right to . . . assistance of appellate counsel unless he is told of his right to such court appointed counsel." 430 Pa. at 5, 241 A. 2d at 763. This Court stated that "[t]he record below, although it does indicate that appellant may have been told that he could appeal, is completely silent as to whether appellant was at any point informed or was aware that he was entitled to court appointed counsel." *Id.* This Court held that the Commonwealth had the burden of proving such knowledge. And this Court, although it could have concluded that the Common-

wealth had not met its burden, remanded for an evidentiary hearing on the question of Wilson's knowledge of his right to free appellate counsel, since it was arguable that our prior decisions had not made it clear that "the Commonwealth must demonstrate, where the record is silent, that the post-conviction applicant was aware of *both* his right to appeal and his right to court appointed appellate counsel." *Id.* (emphasis in original).

*Wilson* was decided on May 3, 1968, nine months *after* Freeman had his evidentiary hearing, and five months *after* the hearing court rendered its opinion. Thus Wilson and Freeman were in precisely the same posture when they had their evidentiary hearings—*i.e.*, the parties did not have the decision in *Wilson* to guide them—and they were in precisely the same posture on appeal. How, then, can this Court now refuse Freeman at least what it granted Wilson? In fact, it is even arguable that Freeman should not be required to go through another hearing, because on this record, even without the guidance of *Wilson,* there is uncontradicted testimony by Freeman indicating that he did not know of his right to free appellate counsel.[5]

Clearly, *Wilson* should control the instant case. The holding in *Wilson* has never been doubted by this Court and was just recently termed "settled law in this Commonwealth." *Commonwealth v. Herge,* 436 Pa. at 549, 260 A. 2d at 790. The holding has been constantly, and explicitly, reaffirmed in later cases. *Commonwealth v. Ritchey,* 431 Pa. at 274-75, 245 A. 2d at 450: "We reaffirm our earlier holding that as a matter of law there cannot be a finding of a knowing and intelligent waiver of the right to counsel unless the accused shall have been explicitly informed that he is entitled to *free* counsel if he is indigent. Commonwealth v. Wilson

---

[5] See note 2, *supra.*

. . . ." (Emphasis in the original) *Commonwealth v. Zaffina,* 432 Pa. at 438-39, 248 A. 2d at 7: "In Commonwealth v. Wilson . . . and again in Commonwealth v. Mumford . . . we held unequivocally that where the trial record is silent on the issue of waiver, 'the Commonwealth has the burden to show not only that a defendant was told, or knew, of his absolute right to appeal, but also that he knew he could have counsel for this appeal, and, if indigent, that he could have free counsel.' Mumford, supra, at 454, 243 A. 2d at 442."

And yet today, for the first time, the majority holds that an indigent defendant represented by free trial counsel does not have to be told of his right to free appellate counsel. Evidently, it will now be presumed, without any evidence, that all indigent defendants, represented by free counsel at trial, know that they can have free counsel on appeal. I submit that such a presumption is arbitrary, contrary to our prior decisions,[6] and totally unjustifiable. One could as easily say that once an indigent is informed of his *Miranda* right to free counsel at interrogation, he is presumed to know that free counsel will follow him through the rest of the trial and appeal. Further, the majority's decision will undoubtedly create uncertainties in the trial courts of this Commonwealth. Nothing, of course, could be more confusing to our trial courts, and the profession, than to say we are following *Wilson* while reaching a totally opposite result.

Besides creating problems for our state court system, today's decision unwisely imposes additional bur-

---

[6] In none of our past decisions have we ever indicated that we would draw a distinction between defendants who were represented at trial by free counsel, and those who became indigent after trial, and thus it is difficult to determine how many of our past decisions fit into either category. But from the facts recited by the Court in those cases, it appears that at least Wilson and Zaffina were represented at trial by free counsel.

dens on the federal courts. Now the two court systems will be in disagreement in this area of federal constitutional law, for the majority's opinion imposes upon the federal courts the uncomfortable and burdensome task of correcting constitutional errors, and protecting constitutional rights, which the state system leaves uncorrected. The federal courts have not, and will not, ignore the dictates of federal constitutional law which, until today, we ourselves had followed in *Wilson* and its progeny.

We are dealing here with a waiver of a federal constitutional right, the right to free appellate counsel as mandated by *Douglas v. California, supra.* As such, we must follow the federal standard for finding waiver: "For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a *known* right or privilege.' " *McCarthy v. United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969) (emphasis added). We cannot *presume* knowledge, and hence waiver, of constitutional rights, for " 'courts indulge every reasonable presumption *against* waiver' of fundamental constitutional rights." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938) (emphasis added). There must be *proof* that the defendant knew he had the right to free appellate counsel; without such proof we cannot find that he knowingly and intelligently waived his constitutional right: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. *Anything less is not waiver.*" *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S. Ct. 884, 890 (1962) (emphasis added).

The majority has done precisely what the United States Supreme Court has held impermissible. Waiver of a federal constitutional right has been presumed

from a silent record. There is *no proof* that appellant knew of his right to free counsel on appeal. There is *no* record to show such knowledge. There can be no waiver. While, in my view, appellant will have no difficulty vindicating his constitutional right in federal court,[7] it is indeed most unfortunate that the majority refuses to allow him to vindicate it here.

Mr. Justice O'BRIEN joins in this dissent.

---

[7] For example, the second circuit, in an opinion by Judge MEDINA, has recently held that *Douglas* "imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent." The case was then remanded for "a further hearing and *finding* on the subject: was Joel Smith [the defendant] informed or did he know prior to the expiration of his time to appeal that he could appeal without cost to himself and with counsel appointed by the state." *United States ex rel. Smith v. McMann* (No. 336, September Term, 1968, decided en banc, October 10, 1969) (emphasis added). In *United States ex rel Sliva v. Rundle*, 295 F. Supp. 613, 615-16 (E.D. Pa. 1969), the court—relying on, and quoting with approval, our decision in *Commonwealth v. Ezell, supra*—stated that "[t]he fact that an indigent does not specifically request counsel on appeal cannot in itself be construed as a knowing and intelligent waiver . . . . Relator clearly knew of his right to appeal, but there is nothing on the record to indicate that he knew of his right to counsel on appeal." The court therefore granted the writ, subject to the Commonwealth giving relator his right to direct appeal with court-appointed counsel. It is also interesting to note that F. R. Crim. P. 32(a)(2), designed to implement a defendant's rights under *Douglas*, provides that the trial court must advise a defendant not only of his right to appeal but also of his right to proceed in forma pauperis if indigent, even if defendant is at the time represented by counsel. *See Advisory Committee's Note*, 39 F.R.D. 69, 193; *United States v. Smith*, 387 F. 2d 268, 269-70 (6th Cir. 1967).