Commonwealth *v.* Stewart, Appellant.

450

Submitted May 26, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Norman M. Yoffe,* for appellant.

*Jerome T. Foerster,* Assistant District Attorney, and *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 9, 1969:
On March 18, 1961, appellant was convicted of first degree murder and sentenced to life imprisonment; no appeal was taken.   On October 28, 1966, he petitioned for a hearing, pursuant to the Post Conviction Hearing Act, claiming that he was not advised of his right to appeal, as mandated by *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963).   The hearing was held on January 31, 1967, and, upon denial of this claim he appealed.   We vacated and remanded for a further

hearing, holding that, while it was clear that appellant knew of his right to appeal, it was not clear from the record that he knew free counsel would be provided for the appeal. *Commonwealth v. Stewart*, 430 Pa. 7, 8, 241 A. 2d 764, 765 (1968). Such knowledge, we held, is an important part of a defendant's rights under *Douglas,* supra; to establish an intelligent and intentional relinquishment or abandonment of a defendant's *Douglas* rights, the Commonwealth must demonstrate not only that a defendant knew he could appeal, but that he knew free counsel would be provided for the appeal if he was indigent. See *Commonwealth v. Wilson,* 430 Pa. 1, 4, 241 A. 2d 760, 763 (1968). On August 20, 1968, a hearing was held pursuant to our remand; on November 13, 1968, the hearing judge filed an opinion holding that the Commonwealth proved by "overwhelming" evidence that appellant did know of his right to free counsel for his appeal. Appellant then appealed to this Court. We need not, however, reach the question of whether the hearing court's findings are supported by the evidence, because on the authority of *Commonwealth v. Littlejohn,* 433 Pa. 336, 250 A. 2d 811 (1969), we must reverse the judgment and allow the appeal as though timely filed.

*Littlejohn,* filed on January 24, 1969, held that where a defendant was originally sentenced to life imprisonment, the Commonwealth was precluded from seeking the death penalty if a new trial was granted. The Commonwealth could not constitutionally threaten a defendant on retrial "with more harsh punishment than that of his original conviction," *Littlejohn,* supra at 348, 250 A. 2d at 817, nor could it single out, for a possible greater punishment, only those who succeed in getting a new trial on appeal, *id.* at 345, 250 A. 2d at 815. Therefore, a decision not to appeal, based on fear of what the Commonwealth could not constitu-

tionally do, "cannot, as a matter of law, be a knowing and voluntary waiver of the right to appeal." *Id.* at 349, 250 A. 2d at 817. Hence, if appellant in the instant case did not exercise his right to appeal because of fear of the death penalty, he cannot be said to have waived his *Douglas* rights and an appeal must be permitted. See *Commonwealth ex rel. Stevens v. Myers,* 419 Pa. 1, 213 A. 2d 613 (1965).

Although neither PCHA hearing was conducted with *Littlejohn* in mind, because *Littlejohn* was decided after both hearings, the evidence on the record of these hearings requires us to conclude that appellant decided not to appeal because of his fear of the death penalty.* At the second PCHA hearing, the record of which will be referred to as "R2," appellant, on cross-examination by the Commonwealth stated: "Mr. Bolton [one of appellant's original lawyers] said he didn't feel that it would take a chance to pursue this any further. He said, be placing my life all over again in jeopardy. . . . This sticks in my mind." R2 at 28.

---

* It is proper for us to examine the records of both PCHA hearings on this appeal. The first PCHA hearing was concerned with whether defendant decided against an appeal because of fear of the death penalty, or because he did not know of his right to appeal. Thus this hearing contains a full record on the question of why appellant's original defense lawyers felt an appeal would be ill-advised. The only question at the second PCHA hearing pursuant to our remand, was whether appellant knew of his right to free counsel; hence, there was no reason for counsel to re-question appellant's original lawyers as to their reasons for not appealing, particularly since *Littlejohn* had not yet been decided. In light of the need for judicial economy, and in all fairness to both the Commonwealth and appellant, there is little reason to remand for another hearing which will cover the same ground as was covered at the first PCHA hearing. Cf. *Commonwealth v. Willman,* 434 Pa. 489, 496, n. 1, 255 A. 2d 534, 537 n. 1 (1969) (concurring and dissenting opinion).

The record of the first PCHA hearing (R1), which was concerned with the reason for not appealing, consistently affirms the fact that appellant's trial lawyers were afraid he would get the death penalty upon retrial, and this was their reason for advising appellant not to appeal. Mr. Bolton testified that he knew "we had a very serious case on our hands, as far as penalty was concerned," R1 at 29, that he and co-counsel exerted a tremendous effort to convince the jury not to impose the death penalty, see R1 at 28-31, and that he advised against appealing because "I felt that the Defendant would be taking a terrible chance because he could well get the death penalty on the second time around," R1 at 31.

Mr. Fearen, trial co-counsel, testifying in reply to the Comonwealth's question as to what transpired in the conference with appellant after the verdict, stated: "[W]e explained to him then as we had before that the penalty as it stood was life imprisonment, that if we took any action to attempt to disturb that penalty, success in that action would mean putting his life on the line again in a subsequent trial. . . . Mr. Bolton made it clear to him that the decision [of whether to appeal] was his, not ours, because it was his life that could be put in jeopardy again if we took any action to attempt to disturb this penalty." R1 at 42. Further quotation of like statements appears throughout the record.

Thus, we must conclude that appellant failed to appeal his conviction because he feared the imposition of the death penalty on retrial. Since *Littlejohn*, supra, requires under these circumstances that appellant be permitted an appeal as though timely filed, we reverse and remand this record to the court below with directions that the court shall appoint counsel for the purpose of filing and arguing post-trial motions and, if necessary, prosecuting an appeal.

·The order of the Court of Oyer and Terminer of Dauphin County is reversed and the record is remanded with instructions.

Mr. Chief Justice BELL dissents.

———

DISSENTING OPINION BY MR. JUSTICE POMEROY:

. Appellant was convicted of first degree murder and sentenced to life imprisonment on March 18, 1961. This Court's decision in *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A. 2d 811, was filed on January 24, 1969. The majority opinion necessarily decides *sub silentio* that *Littlejohn* is retroactive in effect; otherwise, it would not be proper for the Court *sua sponte* to search the record in the case at bar to determine whether appellant's failure to appeal his conviction was caused by fear that he would receive the death penalty on retrial if his appeal proved successful.

In my view, the Court in *Littlejohn* did not address itself to the matter of retroactivity. The Court there held that "A decision not to appeal because of such fear [fear of receiving the death penalty on retrial] cannot, as a matter of law, be a knowing and voluntary waiver of the right to appeal." This newly enunciated rule of law, with which I agree, was not stated as a mandate that it should be applied retroactively.

The majority states that "if appellant in the instant case did not exercise his right to appeal because of fear of the death penalty, he cannot be said to have waived his *Douglas* rights." If in fact it were clear that a *"Douglas* right" was at issue, there would be no question as to retroactivity. *Douglas v. California*, 372 U.S. 353 (1963), *reh. denied*, 373 U.S. 905 (1963) set forth an indigent defendant's right to the assistance of free counsel in the prosecution of a first appeal granted·

as of right,* and that decision is to be applied retroactively. See, e.g., *Daegele v. Kansas*, 375 U.S. 1 (1963) and *Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A. 2d 613 (1965). But I do not understand *Douglas* or the cases which follow it to require retroactive application of all newly enunciated rules of law which might have influenced a particular defendant's decision as to whether an appeal should be taken. Specifically, I do not regard those cases as support for the majority's present conclusion that appellant cannot be deemed to have waived his *"Douglas* rights" if he failed to prosecute an appeal because of fear of the death penalty. Indeed, in view of the Court's treatment of this case I do not see that appellant's putative waiver of his *Douglas* rights is at issue. That question was presented by this appeal, but the Court here holds that it need not reach the issue.

The issue of *Littlejohn's* retroactivity has not been raised by the parties to the present proceeding, and this Court has not had the benefit of briefs or the argument of counsel on this point. The Court may have come to the right result on this issue. On this I have no present opinion, but I am not disposed to reach so important a question concerning the rule of law which *Littlejohn* announces until it is properly raised and presented to the Court. Because the record of the first PCHA hearing indicates that the problem addressed in *Littlejohn* is relevant to this case, I would set the case down for reargument limited to the question of *Littlejohn's* retroactivity.

---

* Appellant's right of appeal in the present case is guaranteed by state law. See Pennsylvania Constitution of 1874, Article V, Section 24 (Article V, Section 9 of the Pennsylvania Constitution of 1968) ; and Act of February 15, 1870, P. L. 15, §1, 19 P.S. §1186.