Commonwealth *v.* Stewart, Appellant.

Argued September 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Norman M. Yoffee,* for appellant.

*Richard A. Lewis,* Deputy District Attorney, with him *Marion E. MacIntyre,* Deputy District Attorney, and *Leroy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 25, 1974:

On March 18, 1961, appellant, Frederick Charles Stewart, was found guilty by a jury of murder in the first degree. No post-trial motions were made and appellant was sentenced to life imprisonment after the jury had become deadlocked on the question of imposition of penalty under the Split Verdict Act. Following two appeals to this Court concerning appellant's constitutional right of appeal, *see Commonwealth v. Stewart,* 430 Pa. 7, 241 A.2d 764 (1968) and *Commonwealth v. Stewart,* 435 Pa. 449, 257 A.2d 251 (1969), a motion for new trial was filed and argued before the Dauphin County Court of Common Pleas en banc. On March 10, 1971, that court denied the motion for new trial and a third appeal to this Court was taken. We reversed and ordered a new trial on the grounds that it was error for the trial court in 1961 not to have granted defendant's motion for withdrawal of a juror when the

court became aware that the father of the victim of the killing was on the panel of jurors from which the trial jury had been selected. *Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972).

On April 9, 1973, appellant's case was called for trial for a second time. Twelve jurors were selected, sworn and impaneled. Subsequent to the impaneling of the jury, the trial judge was informed that the victim's father was then employed as a tipstaff during that session of criminal court and was attending the jurors. The trial judge immediately summoned appellant and his counsel and, after informing them of the position which the victim's father held, he asked defense counsel if he or appellant wished to make a motion. Counsel, after consultation with appellant, advised the court that they would make no motion. Thereupon, the trial court declared a mistrial *sua sponte.* Appellant filed a petition for a writ of habeas corpus alleging that a retrial would constitute double jeopardy. That petition was denied and from that denial this appeal followed.

Initially, we must address the issue of whether Rule 1118(b) of the Pennsylvania Rules of Criminal Procedure precludes a *sua sponte* declaration of mistrial by the trial judge. This question was touched upon in *Commonwealth v. Lauria,* 450 Pa. 72, 297 A.2d 906 (1972), but no conclusive resolution was achieved.[1] In *Commonwealth v. Brown,* 451 Pa. 395, 301 A.2d 876 (1973), Rule 1118(b) was also adverted to, but again by only a plurality of the Court.[2]

---

[1] In *Lauria* three members of this Court—Mr. Justice O'BRIEN in the opinion for the Court and Mr. Justice ROBERTS in a concurring opinion in which Mr. Justice NIX joined—were of the view that Rule 1118(b) precluded a *sua sponte* declaration of mistrial by the trial judge.

[2] In *Brown* a plurality of the Court reasoned that Rule 1118(b) did not apply to all motions for mistrial, but only those where an event prejudicial to the defendant occurred during the trial.

Rule 1118 provides: "(a) Motions to withdraw a juror are abolished. (b) A motion to declare a mistrial shall be made when the prejudicial event is disclosed. In all cases only the defendant or the attorney for the defendant may move for a mistrial. (c) The ruling of the trial judge shall be made a part of the record. (d) When a mistrial is declared, the jury shall be discharged." This rule became effective August 1, 1968, and the Comment to the rule indicates that the rule was to replace the practice of moving for the withdrawal of a juror. Rule 1118 applies to all motions for mistrial. *But see Commonwealth v. Brown,* 451 Pa. 395, 301 A.2d 876 (1973) (plurality opinion). The past practice with regard to moving for the withdrawal of a juror has been delineated and clarified under Rule 1118. The *sua sponte* declaration of mistrial by the trial court, however, has not been changed. The trial court still has the inherent power under appropriate circumstances and in the interests of justice to declare a mistrial, this matter being governed, as before, by the double jeopardy clause of the Fifth Amendment of the United States Constitution. *See, e.g., Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973); *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727, *cert. denied,* 409 U.S. 867 (1972); *Commonwealth v. Ferguson,* 446 Pa. 24, 285 A.2d 189 (1971).

The double jeopardy clause provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . ."[3] Jeopardy attaches when a jury is impaneled. The double jeopardy clause, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. *Wade v. Hunter,* 336 U. S. 684 (1949). The Supreme

---

[3] U. S. Const. amend. V. This clause was held applicable to the states in *Benton v. Maryland,* 395 U. S. 784 (1969).

Court of the United States has frequently addressed the problem of mistrials and the double jeopardy clause, most recently in *Illinois v. Somerville,* 410 U. S. 458 (1973), and has consistently abjured mechanical or per se rules, preferring to rely upon the approach first announced in *United States v. Perez,* 22 U. S. (9 Wheat.) 579 (1824).

Under the *Perez* analysis a trial court has the authority to abort a trial, and the double jeopardy clause will not prevent retrial, *if* the trial court takes "all the circumstances into consideration" and in its "sound discretion" finds that "there is a manifest necessity for the act, or the ends of public justice would be otherwise defeated." 22 U. S. (9 Wheat.) at 580. *See also Illinois v. Somerville,* 410 U. S. at 462; *United States v. Jorn,* 400 U. S. 470, 480-81 (1971); *Gori v. United States,* 367 U. S. 364, 367-69 (1961); *Wade v. Hunter,* 336 U. S. at 691. In *Gori v. United States, supra,* the Supreme Court emphasized the breadth of a trial court's discretion to declare a mistrial:

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and *even over his objection,* and he may be retried consistently with the Fifth Amendment." 367 U. S. at 368 (emphasis added). This Court has previously followed the guidelines set forth above by the Supreme Court. *E.g., Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973). Hence, the pivotal question presented in this case is whether the trial court properly exercised its discretion in finding that either manifest necessity *or* the ends of public justice required the declaration of a mistrial.

In accordance with the scope of our review, we must take into consideration *all* the circumstances when

passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. *United States v. Jorn,* 400 U. S. 470 (1971). The Court in *Jorn,* however, "did not hold that that right may never be forced to yield, as in this case, to 'the public's interest in fair trials designed to end in just judgments.' " *Illinois v. Somerville,* 410 U. S. at 470.

In weighing these interests, the trial judge at appellant's second trial had the counsel of this Court's opinion reversing appellant's previous conviction because the trial judge there had refused to grant appellant's motion for withdrawal of a juror under a virtually identical fact situation. *See Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972).[4] One crucial factual distinction between appellant's first and second trials was that in the first appellant moved for a mistrial, whereas in the second the trial court

--------

[4] In that case this Court held that even the *possibility* of jury prejudice required reversal, because of the *possibility* of an infringement on the accused's right to due process of law. We stated:

"We realize that what we are in effect doing is presuming prejudice for the sake of insured fairness; however, this is exactly what the United States Supreme Court did in Turner [v. Louisiana, 379 U. S. 546 (1965)]. Moreover, the Court employed this same presumption in the Sam Sheppard case where there was a question of prejudice as a result of pretrial stories in the news media. Sheppard v. Maxwell, 384 U. S. 333, 86 S. Ct. 1507 (1966). See also Adams v. United States ex rel. McCann, 317 U. S. 269, 63 S. Ct. 236 (1942) ; Estes v. Texas, 381 U. S. 532, 85 S. Ct. 1628 (1965) ; Rideau v. Louisiana, 373 U. S. 723, 83 S. Ct. 1417 (1963). As was aptly stated by Mr. Justice BLACK in In re Murchison, 349 U. S. 133, 136, 75 S. Ct. 623, 625 (1955), 'our system of law has always endeavored to prevent even the probability of unfairness.' " 449 Pa. 56-57, 295 A.2d at 306.

declared a mistrial *sua sponte* over the objection of appellant. An important ramification of appellant's counseled decision not to move for a mistrial was that had the trial court not declared a mistrial, appellant could not have later successfully raised this failure as error. *See Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972). However, the fact that in refraining from declaring a mistrial the trial court would have committed no error does not necessarily give rise to the converse proposition that in taking affirmative action the trial court erred.

A defendant and his counsel are uncontrovertedly masters of the trial strategy for the defense. The purposeful refusal to interpose a timely motion when the possible defect was suggested by the trial court insulates that defect from appellate review. Although acts of a defendant and his counsel most definitely influence this Court's determination of reviewable error, the question of whether the ends of justice are served is a determination solely for the Court, which determination is not necessarily affected by the interposition of motions by the defendant or his attorney. The trial court was insuring that appellant would receive a trial by a fair and impartial jury which would return a verdict based solely on evidence adduced at trial. This is an interest which is to be protected not only for defendants, but also for the public, which has a compelling interest in justice for all. *See Gori v. United States,* 367 U. S. 364 (1961); *Thompson v. United States,* 155 U. S. 271 (1894); *Simmons v. United States,* 142 U. S. 148 (1891).[5]

------

[5] In *Simmons* the Supreme Court of the United States recognized that: "There can be no conditions of things in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the

Given the standard of appellate review set forth by the United States Supreme Court and the circumstances of this case, this Court cannot say that the declaration of a mistrial was not required by "manifest necessity" and the "ends of public justice."[6] We find no abuse of discretion in the trial court's decision to abort the trial upon learning that the victim's father

court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused." 142 U. S. at 154. In *United States v. Jorn*, 400 U. S. 470 (1971), the Court recognized that *Simmons* did not present a situation where jury prejudice was definite. The Court there stated:

"The Perez case has since been applied by this Court as a standard of appellate review for testing the trial judge's exercise of his discretion in declaring a mistrial without the defendant's consent. E.g., Simmons v. United States, 142 U. S. 148 (1891) (reprosecution not barred where mistrial declared because letter published in newspaper rendered juror's impartiality *doubtful*) . . . ." *Id.* at 481 (emphasis added).

[6] The previous decisions of this Court prohibiting retrial do not support a similar result in this case. In Commonwealth v. Wideman, 453 Pa. 119, 306 A.2d 894 (1973), a mistrial was declared by the trial judge for his own convenience. This Court sustained the claim of double jeopardy, holding that "a trial judge's convenience does not constitute 'manifest necessity' in the constitutional sense." 453 Pa. at 122, 306 A.2d at 895-96. In *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727, *cert. denied*, 409 U. S. 867 (1972), a mistrial had been declared over defendant's objection, after the introduction of evidence in chief had been completed by both sides, on the basis of an improper comment of the assistant district attorney. In *Shaffer* there was clearly much less potential for prejudice than in the present case, but more importantly, the defendant's interests consisted not only of the right to be tried by that jury, but also the substantial right of having a particular case go to that jury. This Court again sustained the claim of double jeopardy. *Commonwealth v. Ferguson*, 446 Pa. 24, 285 A.2d 189 (1971), is readily distinguishable from the present case since there the trial court granted the *Commonwealth's* motion for mistrial on the basis that a necessary prosecution witness was unavailable.

was serving as tipstaff. Accordingly, reprosecution of appellant would not be inconsistent with the Fifth Amendment.

Mr. Justitce EAGEN and Mr. Justice POMEROY join in this opinion.

___

CONCURRING OPINION BY MR. JUSTICE O'BRIEN:

While I agree with the majority that, under the facts of this case, the trial court was justified in declaring a mistrial *sua sponte*, on the grounds of "manifest necessity," I do not agree with the majority's analysis of Rule 1118 in connection with this case.

Rule 1118 does not apply to this case. Rule 1118 only applies to situations where an event prejudicial to the defendant occurs during the trial. *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973), *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972).

When such an event occurs, the drafters of Rule 1118 apparently intended that the choice between sending the case to the jury, and thereby risking the possible effects of prejudice, or aborting the trial, and thereby causing the anxiety and inconvenience occasioned by a second trial, should be made by the defendant and his counsel alone. It was probably felt that the defendant and his counsel are best able to evaluate how well the trial has gone from a strategic standpoint and how serious will be the harm caused by the prejudicial event. Perhaps it was feared that if they, alone, are not given this power, there is a possibility that where the Commonwealth's case has not gone well, grounds for a mistrial could be created by the perpetration of some prejudicial event.

Faced with a situation to which Rule 1118 applies, a trial judge should not, on his own motion, grant a mistrial. Instead, the court should notify the defendant and his counsel of the prejudicial event, and, if the

defendant or his counsel does not wish to move for a mistrial, the court should conduct an on-the-record colloquy, in the absence of the jury, to establish that the defendant is aware of the prejudicial event, is aware of the risks if his case continues, and, nevertheless, knowingly and voluntarily chooses to proceed with the trial.

In the instant case, on the other hand, the reasoning behind Rule 1118 does not apply. First, the trial had not started. No strategic question was involved. Second, no prejudicial event had occurred. Instead, the trial court had been informed that a situation existed which might produce a prejudicial event if left unchanged. Considering that one trial had already been reversed because the victim's father was in a position to prejudice the jury's determination, *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972), and considering that the court had the responsibility for insuring not only that the ends of justice were served, but that they appeared to be served—which appearance would surely be threatened if a court were to allow the father of a homicide victim to serve as court officer in the trial of that homicide—the declaration of a mistrial was certainly justified in this case.

---

Concurring Opinion by Mr. Justice Nix:

I agree that Pa. R. Crim. P. 1118(b) does not remove the trial judge's right to declare a mistrial *sua sponte*. I feel, however, compelled to set forth my reasons for arriving at that conclusion.

Rule 1118(b) provides, in pertinent part, ". . . In all cases only the defendant or the attorney for the defendant may move for a mistrial." It is apparent that the Rule is directed to the power of the litigating attorneys to *move* for a mistrial, not to the power of the trial

judge to *declare* a mistrial *sua sponte*. The rule's obvious purpose is to assure that the defense attorney but not the prosecutor should be able to make such a motion. There is no reason to believe that it in any way attempted to affect the inherent powers of the court, if in fact the court had such inherent power.[1]

In my view, criminal courts have traditionally possessed such power. The ultimate purpose of any trial is to ascertain truth. One of the trial judge's primary obligations as the ultimate guardian of the integrity of the trial is to assure that the adjudication be resolved without influence by extraneous considerations. *Simmons v. United States*, 142 U.S. 148 (1891). Implicit in the creation of an obligation is the grant of those powers necessary to accomplish that obligation.

The power to grant a mistrial *sua sponte* is essential to one charged with the insuring of the integrity of the process. Fortuitous circumstances may arise where it becomes impossible for the trial to proceed uninterrupted. Introduction of highly prejudicial and irrelevant material, problems involving the security of the participants in the trial, death, serious illness or a myriad of other circumstances may combine to disrupt the proceeding and prevent it from serving its basic function—i.e.,—the ascertainment of truth. Where the process has been aborted the judge should not be required to stand by as an impotent eunuch incapable of bringing an end to the debacle on his own. Such an interpretation of Rule 1118(b) would afford the defense the opportunity of exposing before the jury extraneous and prejudicial matters and deny the court any affective

---

[1] While I joined the concurring opinion of Mr. Justice ROBERTS in *Commonwealth v. Lauria*, 450 Pa. 72, 75, 297 A.2d 906 (1972), suggesting otherwise, further consideration has convinced me of the error of my former position.

means of eradicating the effect of this improper influence upon the verdict.[2]

Of course, in order to avoid running afoul of the prohibition against double jeopardy, his reason for acting must be based upon a finding of manifest necessity or that the ends of public justice would otherwise be defeated. *Gori v. United States,* 367 U.S. 364, 367-9 (1961). In my view the exposure of the jury to the deceased's father was so pregnant with the possibility of improper influence, that the trial judge properly declared a mistrial. It is not necessary to find that the father actually communicated with the jury in any illegal way to justify such a result. The very nature of the crime involved and the position held by the deceased's father created an air of impropriety so great as to demand a mistrial. "There can be no condition of things in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused. As was well said by Mr. Justice CURTIS in a case very like that now before us, 'It is an entire mistake to confound this discretionary authority of the court, to protect one part of the tribunal from corruption or prejudice, with the right of challenge allowed to a party. And it is, at least, equally a mistake to suppose that, in a court of justice, either party can

---

[2] While contempt may be a means of punishing an attorney it in no way remedies a verdict that was improperly reached. Where the material is of a highly inflammatory nature a corrective instruction would be a futile gesture.

have a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment of the case.' United States v. Morris, 1 Curtis C.C. 23, 37." *Simmons v. United States,* 142 U.S. 148, 154 (1891).

While the fact that the defendant and his attorney declined to move for a mistrial may be evidence of the degree of prejudice it does not necessarily change the outcome. Defense counsel may have been incompetent or he may have been aware of another unrelated set of circumstances so favorable to the defense that he was willing to continue in the face of this prejudice. To prohibit the trial judge from acting to abort the trial, in such a circumstance, would make the proceeding a contest between countervailing prejudices rather than a resolution of truth based on relevant evidence.

For all of these reasons, I feel that the interests of justice required the trial judge to declare a mistrial.

Mr. Justice POMEROY joins in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Today the plurality creates a strange new role for the trial judge in a criminal case—that of supercounsel for the defense. The plurality's decision empowers the trial judge *sua sponte* to impose upon an accused, over explicit counseled objection, an unwarranted mistrial. Such judicial usurpation of the defense function in this case destroys the essence of the double jeopardy guarantee. I dissent from the plurality's refusal to recognize the denial of that guarantee.

The plurality arrives at its announced result by a gallimaufry of error, speculation, and departure from controlling legal principles. In concluding that another trial would not unconstitutionally place the accused twice in jeopardy for the same offense, the plurality nullifies Pennsylvania Rule of Criminal Procedure 1118(b), which specifies that *only* the defense may

move for a mistrial. The plurality also repudiates *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972), which expressly announced that rule 1118(b) "excludes 'not only a motion by the Commonwealth but a grant of a mistrial by the court on its own motion.'" Id. at 75, 297 A.2d at 907.

Moreover, the plurality dismisses as insignificant the critical fact that appellant waived any possible prejudice. So too the plurality rejects *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727, cert. denied, 409 U.S. 867, 93 S. Ct. 164 (1972). There this Court held that speculative impressions of possible prejudice are constitutionally insufficient to sustain a conclusion of manifest necessity. Ignored also in the plurality's result are the inexorable requirements of the Fifth Amendment of the Constitution of the United States. While declaring that "[t]his Court has *previously* followed the guidelines set forth . . . by the [United States] Supreme Court," the plurality now chooses to abandon the legal principles announced by that Court, other federal courts, and our Court.

The jurisprudential unsoundness inherent in the plurality's determination is revealed in the realities of the trial record. Because "[a] full factual exposition is necessary to an understanding of appellant's double jeopardy contention," *United States ex rel. Russo v. Superior Court*, 483 F.2d 7, 9 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S. Ct. 447 (1973), the critical facts must be stated fully.

About a year ago, this Court reversed appellant's conviction of murder in the first degree and awarded a new trial because the trial judge erroneously denied appellant's timely motion for a mistrial. *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972).

Appellant's new trial began on April 9, 1973. Twelve jurors and two alternates were selected, impaneled and sworn. It was then 3:13 p.m. and a recess

was ordered. The trial judge returned to the bench at 3:47 p.m. In the absence of the jury, he summoned the prosecutor, appellant, and defense counsel, and in their presence stated: "THE COURT: Mr. Yoffe [Defense Counsel], the Court has an announcement to make to you, sir . . . [At Mr. Stewart's first trial] Fletcher Smith, the father of the victim of the killing, Dorothy Stewart, was on the panel of jurors from which the trial jury had been selected, and had been in the same room with the jurors who were hearing the case for as long as two and a half days. That in essence was the factual reason which led to the decision and reversal [by] the Pennsylvania Supreme Court [in *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972)[1]].

"Now, Mr. Stewart, and Mr. Yoffe, I, the trial Judge, have just been advised by the District Attorney that unbeknown to the District Attorney that same person, Fletcher Smith, the father of the victim of the killing, Dorothy Stewart, was sworn in on the first day of this Criminal Court Session as a tipstaff with the sworn duty of attending upon the jurors who were impanelled for this Term. As a consequence, up to a few minutes ago, Fletcher Smith throughout all of last week and today, has been exercising, as I say, his sworn duty of attending to the needs and care and so forth of the panel of jurors.

"What contact Fletcher Smith has had with any individual member of the jury, *I could only speculate.* What Fletcher Smith might have said to any jurors about this trial coming up, *I can only speculate.*

"That is the situation. I ask, Mr. Yoffee, *do you have any motion to make?*

"MR. YOFFE: May I have a minute to consult with Mr. Stewart?

----

[1] More accurately, it was the court's refusal to grant the defendant's timely motion for a mistrial upon that disclosure which required this Court to reverse the conviction and grant a new trial.

"THE COURT: Yes, sir.

"MR. YOFFE: Your Honor, I have discussed the matter to Mr. Stewart and he apparently understands his options and what can be done and what I can do as his attorney in presenting a motion to the Court pertaining to this matter and what his alternatives are if no motion is presented. After explaining those things, Mr. Stewart apparently understands, and he has indicated his desire to me that *we make no motions at this time* in response to the information that you have just given to us. Is that right, Mr. Stewart?

"MR. STEWART: Yes, sir.

"MR. YOFFE: Did you understand what I said?

"MR. STEWART: Yes, I did.

"MR. YOFFE: And you wish to proceed?

"MR. STEWART: Yes."[2]

This colloquy discloses that appellant was specifically informed by the court of the relevant circumstances and of its willingness to entertain a motion for a mistrial. After consultation with counsel, appellant was fully aware of his options. His counseled decision, clearly communicated to the judge, was *not* to move for a mistrial. He specifically requested that trial continue. Despite appellant's voluntary and knowing refusal to make "any motion" and his articulated choice to proceed with the jury sworn, immediately the judge *sua sponte* declared a mistrial and ordered appellant "to be recommitted to incarceration." Appellant's trial was aborted at 3:56 p.m., barely nine minutes after the trial judge's disclosure that Fletcher Smith "was sworn in on the first day of this Criminal Court Session as a tipstaff." In doing so, the trial judge acted purely on conjecture; he said "I could only speculate" whether the victim's father had contact with any of the jurors and "I can only speculate" what, if anything, might

---

[2] Emphasis added.

have been said "to any juror about this trial coming up."

Appellant subsequently petitioned for a writ of habeas corpus. The petition alleged that, in light of the described circumstances, retrial would unconstitutionally place appellant twice in jeopardy. It was also asserted that Pennsylvania Rule of Criminal Procedure 1118(b), recently construed by this Court in *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972), prohibited the trial judge's *sua sponte* declaration of a mistrial. The trial judge denied the petition and ordered appellant to remain incarcerated without bail pending retrial.[3]

## I.

Pennsylvania Rule of Criminal Procedure 1118(b) provides: "A motion to declare a mistrial shall be made when the prejudicial event is disclosed. In *all* cases *only* the defendant or the attorney for the defendant may move for a mistrial." (Emphasis added.) In *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972), this Court, in accordance with rule 1118(b), ordered the discharge of an accused whose trial, as here, had been aborted by a trial judge's *sua sponte* declaration of a mistrial. Mr. Justice O'BRIEN there specifically stated: "The language of the rule is clear, and its obvious intendment is, inter alia, to remove from trial judges the power to declare mistrials *sua sponte*." Id. at 75, 297 A.2d at 907. Today, the explicit language of rule 1118(b) and its "obvious intendment" are rejected absolutely.

The pragmatic soundness of rule 1118(b) and this Court's decision in *Lauria* is readily apparent. If a defendant moves for a mistrial, and his motion is granted, retrial is permissible. See *Commonwealth v. Wide-*

---

[3] *Commonwealth v. Stewart*, 95 Dauphin County Rptr. 375 (Pa. C.P. 1973).

*man,* 453 Pa. 119, 306 A.2d 894 (1973). If the motion for a mistrial is improperly denied, the only consequence of the trial court's error is a new trial, as was the result in this very case when it was last before us. See *Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972). And, as the plurality correctly notes, if a defendant fails to move for a mistrial, then he is foreclosed from raising that issue on appeal.

Only when the court acts on its own motion and declares a mistrial without manifest necessity, is reprosecution barred. To avoid this unnecessary risk, our Court in rule 1118(b) denied trial judges the right to declare mistrials *sua sponte.* If the express language and "obvious intendment" of rule 1118(b) are followed, the problem of double jeopardy is obviated. The plurality, however, by taking the view of the dissenters in *Lauria,*[4] recreated the very hazard of double jeopardy violations adherence to rule 1118(b) and *Lauria* avoids.

## II.

It is only the plurality's refusal to recognize the explicit command of rule 1118(b) which creates here a case of constitutional dimensions. We must therefore consider appellant's fifth amendment claim. Specifically, it must be determined whether the constitutional proscription against double jeopardy will be violated if, in the particular circumstances of this case, appellant must again stand trial. Here, the trial judge, in the absence of appellant's request or consent and solely

---

[4] The plurality declares, "The trial court still has the inherent power under appropriate circumstances and in the interests of justice to declare a mistrial . . . ." This formulation is precisely the one advanced by the dissenters in *Lauria,* where they stated, "[T]his rule [1118(b)] does not and should not deprive a judge of his inherent power under appropriate circumstances and in the interest of justice to declare a mistrial." *Commonwealth v. Lauria,* 450 Pa. 72, 77, 297 A.2d 906, 908 (1972) (dissenting opinion).

on the basis of his stated speculation, *sua sponte* declared a mistrial.

Reprosecution is impermissible "if a mistrial is declared without 'manifest necessity' or without the defendant's request or consent . . . ." *Commonwealth v. Wideman*, 453 Pa. 119, 122, 306 A.2d 894, 895 (1973). See, e.g., *United States v. Jorn*, 400 U.S. 470, 91 S. Ct. 547 (1971); *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824); *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973); *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972); *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727, cert. denied, 409 U.S. 867, 93 S. Ct. 164 (1972); *Commonwealth v. Ferguson*, 446 Pa. 24, 285 A.2d 189 (1971). Once the jury is sworn, jeopardy attaches.[5] Once jeopardy has attached, the Constitution guarantees an accused the "valued right to have his trial completed by [that] particular tribunal . . . ." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 837 (1949).

Appellant did not request a mistrial; neither did he consent to it. To the contrary, he specifically rejected the court's invitation to move for a mistrial and instead decided to proceed with the jury sworn. The Commonwealth argues, however, and the plurality evidently agrees, that the trial judge's *sua sponte* declaration of the mistrial was proper because of manifest necessity.

Although the United States Supreme Court has not announced inflexible rules defining what circumstances constitute manifest necessity, that Court "has always recognized that trial judge's may declare a mistrial without barring reprosecution *only in extraordinary*

---

[5] *Commonwealth v. Almeida*, 362 Pa. 596, 68 A.2d 595 (1949), cert. denied, 339 U.S. 924, 70 S. Ct. 614 (1950); *Commonwealth v. Curry*, 287 Pa. 553, 135 A. 316 (1926); *Commonwealth v. Fitzpatrick*, 121 Pa. 109, 15 A. 466 (1888); *Alexander v. Commonwealth*, 105 Pa. 1 (1884); *McFadden v. Commonwealth*, 23 Pa. 12 (1853).

*circumstances."* *United States ex rel. Russo v. Superior Court,* supra at 13 (emphasis added). Moreover, the Supreme Court has consistently held that these extraordinary circumstances must be factually demonstrated. In other words, there must be a necessity, and that necessity must be manifest. The present record fails to establish necessity—manifest or otherwise.

Conjecture and speculation—the basis for the decisions by both the trial judge and the plurality, are constitutionally incapable of supporting a conclusion of manifest necessity. The plurality in its speculation accepts, without factual basis, the trial judge's assumption that Fletcher Smith, a sworn court officer, violated his oath by illegally seeking, in a court setting, to influence jurors called to try this case. Faced with this record, the plurality steps into the unknown and guesses that the tipstaff's presence might have infected the jury with prejudice against appellant.

It was Frederick Stewart who had the right to be protected from prejudice. Yet Frederick Stewart, fully informed by the court and advised by his trial lawyer, knowingly declined the court's invitation to move for a mistrial. Instead, appellant decided to continue with the jurors sworn to try his case. By this counseled decision, appellant rejected any notion of prejudice. Where, then, is there any ground for aborting the trial?

This Court previously rejected the notion that manifest necessity may be based upon a trial judge's speculative impression of possible prejudice. *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727, cert. denied, 409 U.S. 867, 93 S. Ct. 164 (1972). All other courts which have ruled on this issue similarly have concluded that imagined possible prejudice is constitutionally insufficient to sustain a conclusion of manifest necessity. See, e.g., *United States v. Walden,* 448 F.2d 925 (4th Cir. 1971), modified on other grounds, 464 F.2d 1015 (4th Cir.), cert. denied, 409 U.S. 867, 93 S. Ct. 165 (1972);

*United States v. Burdick*, 284 F. Supp. 685 (E.D. Pa. 1968); *People v. Compton*, 6 Cal. 3d. 55, 490 P.2d 537, 98 Cal. Rptr. 217 (1971); *Ferlito v. Judges of the County Court*, 31 N.Y.2d 416, 292 N.E.2d 779, 340 N.Y. S.2d 635 (1972); cf. *Brindle v. State*, 125 Ga. App. 298, 187 S.E.2d 310 (1972).

Recently, the New York Court of Appeals held: "The Judge's subjective appraisal of some remote possibility of bias was completely without the ambit of the well-established rule that 'manifest necessity' must be shown in justification of a mistrial . . . ." *Ferlito v. Judges of the County Court*, supra at 419, 292 N.E.2d at 780, 340 N.Y.S.2d at 637.

Here, the trial judge twice acknowledged that he "could only speculate" as to possible prejudice. Unresponsive to these well-considered precedents, the plurality errs, as did the trial judge, in venturing into the realm of conjecture to seek prejudice where none was shown.

In *Commonwealth v. Shaffer*, supra, the trial judge declared a mistrial upon speculation that the jury had overheard a possibly prejudicial remark. As here, counsel opposed the declaration of mistrial and waived any possible prejudice. Despite counsel's objection, the court nevertheless declared a mistrial on its own motion. This Court unanimously held that reprosecution was barred by the double jeopardy clause of the fifth amendment. In my view, *Shaffer* controls this case. Only if *Shaffer* is overruled can its precedential force compelling reversal here be denied.

The plurality attempts to distinguish *Shaffer* on the shaky ground that there the mistrial occurred near the end of trial, while here the mistrial was declared near the beginning. The Constitution neither makes nor permits such a distinction. The plurality's theory appears to be the first attempt by this Court or any court to apply the double jeopardy clause only to the last half

of a trial. Once a defendant is in jeopardy—and appellant here definitely was—it is irrelevant at what stage of the trial thereafter a mistrial is erroneously declared. Limiting the double jeopardy guarantee to only the last half of the trial is in effect to afford the accused only half of his constitutional guarantee. The plurality's attempt to distinguish *Shaffer* renders the "in jeopardy" guarantee meaningless—or at most only half meaningful.

The plurality, however, endeavors to justify its conclusion on the theory that the trial court is vested with extraordinarily broad discretion to determine manifest necessity, and that this Court's scope of review of that determination is a limited one. I cannot agree. First, manifest necessity "is a mixed question of fact and law which [appellate courts] can freely review." *United States ex rel. Russo v. Superior Court,* supra at 15. Second, the plurality, presented with a record barren of a showing of judicial discretion, mistakenly concludes that the trial judge did not abuse his discretion. Where there is no exercise of judicial discretion, how is a conclusion warranted that there was no abuse of "discretion?"

Unfortunately, the plurality fails to recognize that the "doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option [to proceed to verdict] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn,* 400 U.S. 470, 485, 91 S. Ct. 547, 557 (1971). This record does not reveal such a scrupulous exercise. Indeed, the critical nine minutes disclose no exercise of judicial discretion.

The plurality equates "a scrupulous exercise of judicial discretion" with a ruling prompted by pure speculation. This equation does not balance, and I cannot accept the plurality's erroneous constitutional calculus.

Only recently, the United States Court of Appeals for the Third Circuit, in explaining the phrase "scrupulous exercise of judicial discretion," declared with unquestioned clarity that the trial judge has "a duty to exhaust all other reasonable possibilities [short of trial abortion] before deciding to foreclose [a] defendant['s] option to proceed . . . . The scrupulous exercise of that discretion means that he must seek out and consider all avenues of cure to avoid trial abortion." *United States v. Tinney,* 473 F.2d 1085, 1089 (3d Cir.), cert. denied, 412 U.S. 928, 93 S. Ct. 2752 (1973) (quoting *United States v. Walden,* 448 F.2d 925, 929 (4th Cir. 1971), modified on other grounds, 464 F.2d 1015 (4th Cir.), cert. denied, 409 U.S. 867, 93 S. Ct. 165 (1972)). The Fifth Circuit has similarly held that a trial judge must "make a painstaking examination of all the facts and circumstances . . . . Only after such a careful investigation can a trial judge properly exercise his discretion . . . ." *McNeal v. Hollowell,* 481 F.2d 1145, 1152-53 (5th Cir. 1973), cert. denied, 415 U.S. 951, 94 S. Ct. 1476 (1974). Indeed, "[t]he manifest necessity doctrine . . . demands a thorough inquisition by the trial judge into all the facts and a painstaking consideration of all possible cures short of trial abortion." *United States v. Walden,* supra at 930. The Constitution requires at the very least that the trial judge "consider alternatives to declaring a mistrial." *United States v. Cheung,* 485 F.2d 689, 691 (5th Cir. 1973).

Where, it must be asked, does this particular record show exhaustion of "all other reasonable possibilities?" Did the trial court "seek out and consider all avenues of cure?" Where was the necessary "painstaking examination" and "careful investigation?" The record surely does not disclose the constitutionally-required inquiry or consideration of alternatives.[6]

---

[6] Clearly, the opportunity for a proper exercise of discretion existed. If the judge entertained doubts whether the tipstaff had

The record reveals only that the trial judge, as in *Jorn*, "acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest [an alternative], or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that . . . there was a manifest necessity for the *sua sponte* declaration of this mistrial." *United States v. Jorn,* supra at 487, 91 S. Ct. at 558.

### III.

Appellant is entitled to relief on at least two grounds—procedural violation of rule 1118(b) and the trial judge's abuse of discretion in imagining manifest necessity. However, this case could be disposed of on another basis only tangentially discussed by the plurality. The plurality dismisses as insignificant the critically important facts that appellant refused to move for a mistrial and affirmatively requested that the trial continue. At that juncture, the trial judge was precluded from aborting the trial.

At trial appellant and his counsel deliberately declined to move for a mistrial. Instead, appellant created a positive record establishing his satisfaction with the jury selected. He never even suggested the existence of a prejudicial event. Appellant's trial decision not to request a mistrial, even at the court's invitation, is an unequivocal admission of the nonexistence of prejudice. Here, as in *People v. Boyd,* 22 Cal. App.

---

violated his oath, the judge could, for example, have questioned Fletcher Smith under oath. If the judge still harbored doubts about possible jury taint, he could have questioned the jurors under oath, and determined whether the tipstaff had improperly communicated with them.

3d 714, 719, 99 Cal. Rptr. 553, 556 (1972), "[t]he defendant was . . . entitled to a trial before an unprejudiced jury. He was offered [a] new trial and refused it. This refusal . . . could be viewed as tantamount to a concession by defendant and his counsel that the . . . actions were not prejudicial." See also *Goodman v. United States*, 273 F.2d 853, 860 (8th Cir. 1960).

The plurality correctly recognizes that this purposeful refusal to interpose a timely motion when the possible defect was suggested by the trial court insulates that "defect" from appellate review. While reciting this principle, the plurality nevertheless concludes that appellant's course of action "does not necessarily give rise to the . . . proposition that in taking affirmative action the trial court erred." The simple reply is that after appellant waived this possible defect in his trial, no "necessity," much less a manifest necessity, existed.

For this reason, the plurality's reliance on *Illinois v. Somerville*, 410 U.S. 458, 93 S. Ct. 1066 (1973), is entirely misplaced. The plurality excises the words "ends of public justice" from that opinion and believes the incantation of these words can magically heal the constitutional wound inflicted upon appellant. Concededly, the *Somerville* Court relied on an "ends of public justice" notion, but not in the sense that the plurality uses that phrase. We must be mindful of the caveat in *Somerville* that "divorcing the language from the facts of [a] case serves only to distort its holdings." Id. at 469, 93 S. Ct. at 1073. Unfortunately the plurality severs the "ends of public justice" from the facts of *Somerville.*

*Somerville* specifically involved a formal defect in an indictment which "could not be waived by the defendant's failure to object, and could be asserted on appeal or in a post-conviction proceeding to overturn a final judgment of conviction." Id. at 460, 93 S. Ct. at

1068. Given these facts, the Supreme Court explained the limited circumstances when a mistrial could be declared in the "ends of public justice." "If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court." Id. at 464, 93 S. Ct. at 1070.

We are here dealing with a non-*Somerville* defect in the proceedings—a speculative one—a defect, if any, that not only could be waived at trial, but which, as the plurality correctly states, was actually waived by appellant.[7] Since an accused can knowingly and intelligently waive any constitutional right,[8] there is no

---

[7] The *Somerville* requirement that reversal be "a certainty" cannot be overemphasized. It has recently been observed that "a reasonable apprehension that a trial is flawed sufficiently to result in reversal and retrial is not sufficient 'manifest necessity' to justify trial abortion." *United States v. Walden*, 448 F.2d 925, 930 (4th Cir. 1971), modified on other grounds, 464 F.2d 1015 (4th Cir.), cert. denied, 409 U.S. 867, 93 S. Ct. 165 (1972). If a reasonable apprehension is insufficient, then it can hardly be concluded, as the plurality evidently does, that the total absence of any possibility for reversal constitutes manifest necessity.

[8] See, e.g., *Commonwealth v. Phillips*, 208 Pa. Superior Ct. 121, 220 A.2d 345 (1966), aff'd, 424 Pa. 641, 226 A.2d 863, cert. denied, 387 U.S. 946, 87 S. Ct. 2084 (1967) (grand jury indictment); Pa. R. Crim. P. 215(a) (same); *United States v. Banks*, 370 F.2d 141 (4th Cir. 1966), cert. denied, 386 U.S. 997, 87 S. Ct. 1317 (1967) (speedy trial); *Aeby v. United States*, 255 F.2d 847 (5th Cir. 1958) (jury trial); *Commonwealth v. Garrett*, 439 Pa. 58, 266 A.2d 82 (1970) (same); Pa. R. Crim. P. 1101 (same); Pa. R. Crim. P. 1103 (trial by less than 12 jurors); *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019 (1938) (counsel); *Commonwealth v. Ritchey*, 431 Pa. 269, 245 A.2d 446 (1968) (same); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966) (counsel during interrogation); *Burgess v. King*, 130 F.2d 761 (8th Cir. 1942) (confrontation of witnesses); *Commonwealth v. Petrillo*, 340 Pa. 33, 16 A.2d 50

reason why this appellant could not waive the opportunity to move for a mistrial that the trial judge was offering.

It is unquestioned that in this Commonwealth strategic and tactical decisions during trial are for counsel. *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A.2d 456 (1972).[9] This Court recently said in another context, "the litigant is the complete master of his own cause of action in matters of substance; he may press it to the very end regardless of the facts and law arrayed against him." *Archbishop v. Karlak,* 450 Pa. 535, 539, 299 A.2d 294, 296 (1973).

The controlling fact here is that appellant, acting upon the advice of the same attorney who at his 1961 trial properly requested a mistrial when he believed that appellant's jury was prejudiced, did in this trial make a voluntary and knowing decision to refuse to move for a mistrial. At appellant's earlier trial, the decision to move for a mistrial was entirely sound. On appeal, that trial decision was vindicated by this Court. *Commonwealth v. Stewart,* 449 Pa. 50, 295 A.2d 303 (1972). There is nothing to suggest that counsel's advice to refuse to move for a mistrial reflected anything but trial advocacy of the highest quality. Here appel-

---

(1940) (same). Cf. *Commonwealth v. McGrogan,* 449 Pa. 584, 588 nn. 8-12, 297 A.2d 456, 458 nn. 8-12 (1972). See generally Sandalow, Henry v. Mississippi and the Adequate State Ground: Proposals for a Revised Doctrine, 1965 Sup. Ct. Rev. 187; Comment, Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest, 54 Calif. L. Rev. 1262 (1966).

[9] Indeed, it is the primary duty of defense counsel to pursue zealously his client's best interests. This is fundamental to our adversary system of criminal justice. See *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396 (1967); *Powell v. Alabama,* 287 U.S. 45, 53 S. Ct. 55 (1932); *Suggs v. United States,* 391 F.2d 971 (D.C. Cir. 1968); *Commonwealth v. Jones,* 451 Pa. 69, 301 A.2d 811 (1973); ABA Code of Professional Responsibility, Canon 7 (1969).

lant evidenced his counseled choice to continue with trial by definitely refusing to move for a mistrial.

Appellant's positive waiver was sufficient to preclude the trial judge from imposing his *sua sponte* mistrial. This waiver conclusively established appellant's right to proceed with the trial.

To overcome appellant's specific waiver, the plurality creates a new and unprecedented use for the "ends of public justice." The rule now announced is that whenever a trial judge disagrees with the defense's studied strategy, the "ends of public justice" allow the judge to declare a mistrial and thereby substitute his own conception of sound trial strategy for that of the defendant and his counsel. Thus the trial judge is assigned a novel role, that of supercounsel for the defense.

To permit a trial judge in these particular circumstances to do more than invite a motion from counsel is to sanction unwarranted judicial intrusion into the attorney-client relationship and into the right of the defense to decide trial strategy and to conduct its case. See *Brooks v. Tennessee*, 406 U.S. 605, 92 S. Ct. 1891 (1972).[10] Appellant's counseled choice was to continue

---

[10] In *Brooks v. Tennessee*, 406 U.S. 605, 92 S. Ct. 1891 (1972), the Supreme Court held unconstitutional a Tennessee statute requiring that an accused " 'desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case.' " Id. at 606, 92 S. Ct. at 1892 (quoting Tenn. Code Ann. § 40-2403 (1955)). This statute, which "restrict[ed] the defense— particularly counsel—in the planning of its case," and "thereby deprived [the accused] of the 'guiding hand of counsel,' " was held violative of due process. Id. at 612-13, 92 S. Ct. at 1895. Here, in addition to offending the double jeopardy guarantee, the trial judge's *sua sponte* declaration of a mistrial, like the statute in *Brooks*, must be viewed as an infringement on appellant's right to due process because the court's disregard of trial counsel's considered decision not to move for a mistrial interfered with appellant's constitutional guarantee of effective assistance of counsel.

with trial. His "desire to proceed and have the question of guilt or innocence finally resolved by the jury then impanelled must be respected . . . ." *Commonwealth v. Shaffer,* supra at 101, 288 A.2d at 733.

## IV.

What this record makes clear cannot be refuted. The record substantiates that the trial judge erroneously intruded upon the conduct of a counseled defense and failed to consider "the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* supra at 486, 91 S. Ct. at 558.

The particular circumstances of this case in no way permit subjecting appellant to a third prosecution for the same offense in violation of the double jeopardy guarantee. "[T]his record shows nothing to take appel-l[ant's] claims outside the classic mold of being twice placed in jeopardy for the same offense." *United States v. Jorn,* supra at 488, 91 S. Ct. at 558 (BURGER, C. J., concurring).

Appellant is entitled to the relief guaranteed by the double jeopardy clause of the fifth amendment.

Mr. Justice MANDERINO joins in this dissenting opinion.

---

See *United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir. 1969), cert. denied, 397 U.S. 946, 90 S. Ct. 964 (1970).