## Commonwealth v. Bilbee

*Martin J. King, Assistant District Attorney,* for Commonwealth.

*Paul Laskow, Assistant Public Defender,* for defendant.

BODLEY, *J.,* February 28, 1975—Alan Bilbee was found guilty of burglary and larceny following a two-day trial by jury. Post-trial motions were heard and dismissed. From the judgment of sentence, he has appealed to the Superior Court of Pennsylvania.

Upon his return from work on February 23, 1973, at approximately 4 p.m., the victim discovered that his residence had been entered by the forcing of a rear window, after removal of storm sash. The storm sash was missing. Stolen from the premises were his wallet, containing a substantial sum of cash, and a pair of black gloves. Police investigators were called.

The evidence disclosed that the bottom sill of the window in question was 6 feet, 2 inches from the ground and that the intruder had stood upon a nearby trash can to gain access to the small, 27 inch x 10 inch window opening. During the course of police investigation, defendant, who was small and slight of stature and resided with his father in an adjoining residence, was seen to leave the area in his automobile. Although he had been seen by the victim many times prior to the burglary, at his father's home, he never returned after his depar-

ture an hour or so after discovery of the crime. Latent fingerprints were lifted by police from the missing window which was found, with the missing black gloves, in a field directly behind the two dwellings. Two days following the crime, a warrant was secured for the arrest of defendant.

An FBI fingerprint expert testified that seven of the lifts were of sufficient quality to permit comparison with defendant's known fingerprints. He testified that while, as a general rule, eight comparison points are needed for a positive identification, there were 16 points of comparison here. Testifying that in the history of fingerprint classification and comparison there has never been found two identical prints from different human beings, the expert offered to the jury his opinion that the prints found upon the window removed from the victim's home were made by this defendant. Defendant offered no testimony. The jury returned its verdict of guilty within one-half hour of the time it retired to deliberate.

The trial of the case began September 24, 1974, and was the second such trial, the first having resulted in a mistrial declared by the trial judge, sua sponte, because at 12:15 a.m. on June 21, 1974, the jury had been unable to reach a verdict after deliberating since 3:20 p.m., June 20, 1974. During the period of deliberation the first trial jury, on at least two occasions, had returned to the courtroom and pronounced that they were hopelessly deadlocked. However, they were nonetheless held in deliberation by the trial judge until 12:15 a.m., at which time, after finding a manifest necessity for the same, a mistrial was declared over the objection of defendant.

In support of his post-trial motions, defense coun-

sel urged upon the court two reasons therefor, both of which were deemed to be without merit by the trial judge. It is assumed that the same argument will be presented to the Superior Court.

First, it is urged that Pa.R.Crim.P. 1100(e) was violated by the failure of the Commonwealth to try defendant within 90 days following the mistrial of June 21, 1974. That rule provides: "A new trial shall commence within a period of ninety (90) days [since amended to read 'one hundred and twenty (120) days'] *after the entry of an order by the trial court or an appellate court granting a new trial.*" (emphasis supplied).

Although the second trial began more than 90 days after the first was terminated, it is our opinion that Rule 1100(e) is not applicable. We believe that the rule clearly contemplates the retrial of a defendant whose post-trial motions have been sustained by the trial court, or whose appeal from judgment of sentence has been sustained by an appellate court.

In many such instances, the delay between trial and the order for a new trial, particularly where a new trial is granted by an appellate court, necessarily extends for many months, or perhaps a year or more, before the order granting the new trial is entered. A substantial delay in securing the speedy trial guaranteed defendant by the Sixth Amendment to the United States Constitution has thus already been encountered by virtue of the post-trial proceedings alone, but such delay is acceptable, since an essential ingredient to the right to a speedy trial is "orderly expedition and not mere speed.": Smith v. United States, 360 U.S. 1 (1959). Rule 1100, therefore, reasonably provided for a prompt retrial in such instances but was not intended, we

believe, to apply to a retrial following mistrial by virtue of a hung jury.

Defendant is nonetheless protected by his Sixth Amendment rights. In considering a defendant's speedy trial rights under the Sixth Amendment, the factors to be considered include the length of delay, the reason for delay, defendant's prompt assertion of his right to a speedy trial, and prejudice to defendant: Barker v. Wingo, 407 U.S. 514 (1972). It has not been argued here that an unreasonable delay has been encountered nor that defendant suffered any prejudice as a result of his not having been tried a few days prior to September 24, 1974. Under such circumstances, it appears to be clear that defendant's right to a speedy trial under the Sixth Amendment has not been violated.

The second argument advanced by defense counsel is that of double jeopardy. It is conceded that, generally, where a court declares a mistrial, sua sponte, a subsequent trial of defendant places him in double jeopardy. See Commonwealth v. Culpepper, 221 Pa. Superior Ct. 472 (1972); Commonwealth. v. Williams, 221 Pa. Superior Ct. 480 (1972); Commonwealth v. Shaffer, 447 Pa. 91 (1972). See also Commonwealth v. Lauria, 450 Pa. 72 (1972), in which it was stated that since Pa.R.Crim.P. 1118(b) provided that only defendant or his counsel might move for a mistrial, the rule excluded not only a grant of a mistrial on motion of the Commonwealth, which is conceded, but, as well, a grant of a mistrial by the court on its own motion, suggesting thereby that the inherent power of the court to declare a mistrial under the doctrine of "manifest necessity" as expounded in United States v. Jorn, 400 U.S. 470 (1971), was intended to be abrogated by the rule. In a dissenting opinion

Mr. Chief Justice Jones took strong issue with this conclusion, stating that the rule had never been intended to restrict judges in the declaration by them, sua sponte, of a mistrial.

Subsequently, of course, the rule was amended effective September 1, 1974, so as to include language which made clear the intent to permit a trial judge to declare a mistrial, but only for reasons of manifest necessity. Even prior to the revision of Rule 1118(b) our Supreme Court had unequivocally announced that the power of the trial court to declare a mistrial, sua sponte, had not been changed by the rule and that the inherent power under appropriate circumstances to declare such a mistrial remains in the trial judge, governed only by the double jeopardy clause of the Fifth Amendment. In Commonwealth v. Brown, 451 Pa. 395, 400 (1973), the court stated that Rule 1118 "covers only those situations where an event which is prejudicial to the defendant occurs [during trial]. It does not deal with the situation of a hung jury."

Subsequently, in Commonwealth v. Stewart, 456 Pa. 447, 451 (1974), a case involving prejudice— not a hung jury— the court said: ". . . the pivotal question presented in this case is whether the trial court properly exercised its discretion in finding that either manifest necessity *or* the ends of public justice required the declaration of a mistrial." Quoting from Gori v. United States, 367 U.S. 364, 367-69 (1961), the court in Stewart stated:

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be obtained without discontinuing the trial, a mistrial may be declared without the defendant's consent and *even over his objection,*

and he may be retried consistently with the Fifth Amendment." (emphasis supplied).

It further held specifically that Rule 1118 changed in no way the court's inherent pre-existing power to declare a mistrial, sua sponte.

Here, we believe, manifest necessity dictated the decision of the trial judge when at 12:15 a.m., following nine hours of deliberation and following his earlier rejection of the jury's suggestion that it was "hopelessly deadlocked," he decided to terminate the trial over defendant's objections. Without regarding, for the moment, the comfort, convenience and personal problems of jurors (which factors a trial judge must cope with daily), it goes without saying that an element of coercion is brought to bear upon jurors to disregard their individual sworn duty in the interest of bringing to an end what to them, perhaps, might seem an unbearable situation. It must be borne in mind that no ready facilities for the putting up of jurors are usually available as in the case of a large city. After a long day of trial, argument of counsel, charge of court and nine hours of deliberation in a conscientious effort to perform the duty imposed upon them, the jurors should not be required to forsake their oath in order to escape from an intolerable situation. Such coercive effect, needless to say, might well work against the interest of a defendant according to the split of ballot at any given time. While the determination of a trial judge to declare a mistrial after jeopardy has attached "is not one to be lightly undertaken" (Commonwealth v. Stewart, supra, at page 452); none-the-less in an instance such as this, we believe both defendant's interest and the public interest justified the decision made.